**In re the MARRIAGE OF Ann Elizabeth SCHROEDER and Dennis J. Schroeder.**

**Upon the Petition of Ann Elizabeth SCHROE-DER, Appellant, And Concerning Dennis J. SCHROEDER, Appellee.**

No. 55621.

Supreme Court of Iowa.

July 3, 1973.

Sheridan, Sheridan & Mellick Ltd., Waukon, for appellant.

Fuerste & Carew, Dubuque, for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

Ann Elizabeth Schroeder, petitioner-wife, appeals from trial court's final decree entered in dissolution of marriage proceedings decided under the provisions of chapter 598, The Code, 1971.

March 16, 1970, Mrs. Schroeder had filed a petition in equity seeking a divorce, temporary support, permanent alimony, an equitable distribution of property, custody of two minor children of the parties and support payments under chapter 598, The Code, 1966 which was repealed by the Second Session of the Sixty-third General Assembly, effective July 1, 1970. In accordance with an agreement of the parties the matter was submitted under the provisions of the new dissolution of marriage proceedings which now appears as chapter 598, The Code, 1971.

Hearing on the dissolution proceedings commenced March 29, 1971. In its decree filed June 30, the trial court ruled there had been a breakdown of the marital relationship to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be saved. Section 598.17, The Code, 1971.

The court therefore decreed dissolution of the marriage, awarded custody of the elder son, Jeffrey, to petitioner and the younger boy, Kevin, to respondent, Dennis J. Schroeder, and adjusted the rights and obligations of the parties by making an award of property settlement and an allowance of alimony, child support and attorney fees.

Shortly thereafter petitioner filed a motion to enlarge the court's findings and to modify the decree, seeking custody of Kevin and additional support payments. Respondent also moved to have the court modify its decree asserting he would be financially unable to comply with the obligations imposed on him.

Following a hearing on the motions on July 28, 1971, trial court enlarged its findings of fact and accordingly filed its amendment to the prior judgment and decree August 9.

I. On appeal petitioner claims the court erred in determining the property division and the rights and obligations of the parties. This language from In re Marriage of Williams, 199 N.W.2d 339, 346 (Iowa 1972), defines this court's function on appeal:

"In equity it is our duty in a de novo review to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. * * * [citing authority] While weight will be given to findings of trial court this court will not abdicate its function as triers de novo on appeal. * * * [citing authority]."

Section 598.21, The Code, 1971, provides:

"Alimony—custody of children—changes

"When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified.

"Subsequent changes may be made by the court in these respects when circumstances render them expedient."

After graduating from high school, respondent worked for John Deere for about one year and then obtained employment with the J. C. Penney Company in Dubuque. Since that time he has continued to work for J. C. Penney and has attained the position of department manager. His annual salary is $10,500. Approximately five percent of that salary is paid into the company's retirement plan. If respondent retires at age 65 he would receive about $518 per month from the retirement fund.

At the time of the marriage in 1951, petitioner, also a high school graduate, was employed by the J. C. Penney store. After marriage, petitioner worked at Roshek Brothers for about two and a half years. She did not again seek gainful employment until 1969, when she worked at the Telegraph-Herald newspaper accumulating an earning total of about $4000. However, it became physically impossible for her to continue her work and she quit the job in 1971. Petitioner testified she could secure employment after dissolution of the marriage but preferred to remain at home with the boys.

In 1955 the parties purchased a home on Green Street in Dubuque for $10,750. A down payment of $2700 was made on the home, $500 of which was received from petitioner's mother as a loan, $250 was loaned from other parties and the remainder came from petitioner's savings. The parties remained in this home until 1966 when they purchased a lot and built their present home at 1884 Carter Road in Dubuque. The home on Green Street was sold for about $15,500 from which the parties realized $10,000 in cash in hand to be applied to the cost of their new home. Respondent borrowed $2300 from his retirement fund to further finance the home. In addition, $1800 inherited by petitioner was used to purchase the home and new furniture. At the time of trial the fair market value of the home was approximately $25,000 and it was encumbered to the extent of $6100.

Petitioner and respondent were both 50 years of age at the time of trial. Together with their personal residence, the parties jointly owned 30 shares of J. C. Penney Company stock with a value of $60 per share; five United States savings bonds valued at $25 per share; a 1968 Ford automobile with an approximate value of $1600; and household goods and furnishing (no estimated value).

Respondent had a bank checking account of $250 at the time of trial and owned three life insurance policies which have a total face value of $8000.

Petitioner, on the other hand, apparently had neither assets nor liabilities other than attorney fees at the time of trial.

Since the petition was filed in March of 1970, petitioner stated she received payments totaling about $2200 from respondent until the trial. Respondent testified he gave petitioner approximately $3100 during this period for child support, mortgage payments, property taxes, utilities and additional cash and clothing for the children.

Petitioner testified she has never received treatment for mental illness and there is no indication either of the parties, or the children, suffer from any kind of physical impairment or illness.

In its final amended judgment and decree the court dissolved the marriage and awarded petitioner custody of both children.

Based on the foregoing factual background and the additional finding that respondent was without the necessary "resources with which to provide payment for support of [petitioner] and her children from and after April 15, 1971, and the sum of $350 provided [under the original judgment] for [petitioner's] legal expense, as well as his own expenses in defense of this action," the trial court provided as follows:

(1) That respondent should pay petitioner $200 per month for support of the children through April 15, 1980, unless *both* children become deceased, married or self-supporting.

(2) That the stocks and bonds should be converted to cash with the proceeds to be used to pay the costs of the litigation and to pay $350 toward the attorney fees of both petitioner and respondent; the remainder to be forwarded to petitioner as temporary allowance and child support during the pendency of this action up to and including September 1, 1971.

(3) That petitioner should receive all right, title and interest of the respondent in and to the $1000 Equitable Life Assurance Society policy and if permitted by Veterans' Administration Regulations, the $2000 Veterans' Administration life insurance policy; if respondent could not lawfully transfer the policy to petitioner, the court ordered that he maintain the policy in full force and effect naming both sons as equal beneficiaries.

(4) That petitioner should further have all of the household goods except one complete set of bedroom furniture and two items of major living room furniture to be selected by respondent.

(5) That respondent be given the Ford automobile.

(6) That the parties "shall henceforth * * * hold * * * [the homestead] as tenants in common in equal undivided shares."

(7) That petitioner could occupy the home until April 1, 1972.

(8) That until said date respondent should continue to make the monthly payments on the mortgage on said real estate, annual premiums for insurance therein and all real estate taxes up to and including the 1971 real estate taxes due and payable in 1972.

II. The underlying theory of the contentions urged by petitioner in each of her six propositions relied on for reversal is that the decree and amendments thereto were inequitable and unjust in regard to the division of property and alimony and support payments when the circumstances presented by the evidence are considered in light of the criteria set forth in Schantz v. Schantz, 163 N.W.2d 396, 405 (Iowa 1968).

Petitioner insists the court erred: (1) in failing to award her sole ownership of the homestead; (2) in not requiring respondent to continue payment of the mortgage indebtedness, insurance premiums and real estate taxes on the home after April 1, 1972; (3) in failing to make provision as to petitioner's right of occupancy of the homestead after April 1, 1972; (4) in ruling that the stocks and bonds should be liquidated and the proceeds applied to the attorney fees of both parties, the court costs and petitioner's support payments; and (5) in not requiring respondent to pay petitioner's attorney fees. The sixth proposition is similar to the fourth.

It is deemed advisable to point out that the periodic payments required of respondent were not for the support of *both* the children and petitioner. The decree specifically provides that respondent should make monthly payments of $200 commencing September 15, 1971 and continuing through April 15, 1980 as support for the minor children of the parties, Jeffrey and Kevin. It further provided that such payments were to cease if both children should earlier become deceased, married or self-supporting. At time of trial Jeffrey was 17, a junior in high school and Kevin, 12, was in the sixth grade. In view of Jeffrey's scholastic standing as shown in the record it is fair to infer that he has now finished high school.

Neither party questions the court's authority to extend child support payments through April 15, 1980 under the circumstances shown in the record. Hence, we do not reach the question. But see section 598.1, subparagraphs 2 and 3, The Code, 1971.

Attention is also directed to the fact that no provision was made for periodic payments of alimony. In our opinion the award made for petitioner constitutes a property settlement. Knipfer v. Knipfer, 259 Iowa 347, 351–354, 144 N.W.2d 140, 142–144.

Both parties make reference to the factors set forth in *Schantz* eliminating, of course, "the guilty party" concept as directed by In re Marriage of Williams, 199 N.W.2d at 345–346, in support of their respective contentions bearing on the equity of the decree.

Petitioner's first three propositions are closely related. As indicated, they concern provisions made or not made as to the homestead. Mrs. Schroeder's complaint is the fact she was not awarded the entire equity of the parties in the real estate. She insists the real estate owned by the parties during the marriage was not disposed of by the terms of the decree. We do not agree. Title to the homestead was held in joint tenancy. The decree established ownership in the parties as tenants in common with equal undivided shares.

Respondent, on the other hand, maintains he is entitled to "some slight remainder of the capital goods of this marriage." He points out that by the terms of the decree he was awarded a 1968 automobile, one complete set of bedroom furniture and two major items of living room furniture. Since the policy in the Northwestern Mutual Life Insurance Company on respondent's life in the face amount of $5000 was not otherwise disposed of, it remains his asset.

Dennis Schroeder had been working for J. C. Penney since 1948. From his annual salary he had a take home pay of approximately $600 per month at time of trial. He tells us that at his age bracket, "there is no way of any advancement for me beyond the position I am in right now."

Petitioner was earning $30 to $50 a week babysitting since the separation. She is capable of steady employment at a much better salary by reason of her previous business experience. There is reason to believe her health will improve now that her domestic problems have been aired. Jeffrey earned his own spending money and tuition while in high school and Kevin had a paper route which netted him approximately $15 per week.

We are not told *in the record* whether respondent has made the monthly payments of $128 required of him until April 1, 1972, to cover the mortgage installments on the homestead. Nor are we told whether he has paid the insurance premiums to that date on the premises and the real estate taxes due in 1972. If he has not, the amount of any such unpaid payments to April 1, 1972, are a lien against respondent's undivided one-half interest in the real estate.

In considering whether the decree is equitable and just we must bear in mind that as a cotenant respondent's share in the real estate is subject to his half share of the unpaid balance due on the mortgage, taxes and insurance premiums due and payable after April 1, 1972.

From our de novo review we determine that when considered in light of the admissible significant factors set forth in *Schantz*, the provisions made concerning the homestead are just and equitable.

III. In support of her fourth proposition stated earlier in this opinion and her sixth which is similar, petitioner complains it was unjust to take from her the J. C. Penney stock and United States savings bonds originally awarded to her in the June 30, 1971 decree and direct that such stocks and bonds be liquidated and the proceeds applied toward the payment of the attorney fees of both parties, the court costs and petitioner's support payments.

In the original decree respondent was ordered to pay petitioner $200 per month for the support of herself and Jeffrey retroactive to April 15, 1971. At the time of

the amended decree August 9, 1971, four monthly installments for a total amount of $800 had accrued. In the amended decree attorney fees of the parties totaling $700 were to be paid, as well as court costs which included the cost of a deposition in the sum of $100. The amount of the remaining costs does not appear. According to the record the J. C. Penney stock and United States savings bonds should have produced in the neighborhood of $1925. This is not a situation where the trial court in entering a decree on a petition for modification in a dissolution proceedings was attempting to modify installments of support which had already accrued. Siver v. Shebetka, 245 Iowa 965, 968–969, 65 N. W.2d 173, 175. The funds should have been sufficient to pay the support installments in full.

█ At one point petitioner seems to be arguing that the court was without authority to subsequently modify or amend the rights and obligations of the parties as they were fixed under the court's original decree. The argument is without merit. The legislature empowered the trial court to make subsequent changes with relation to the children, property and maintenance of the parties when circumstances render such changes expedient. Section 598.21, The Code, set out supra.

█ Petitioner's only valid argument in this court must be that the provisions of the court's final judgment and decree were unjust to her.

The application of the proceeds from the sale of the stocks and bonds as directed by the trial court was neither unjust nor inequitable.

The assignments are without merit.

What we have said with reference to propositions 4 and 6 apply likewise to petitioner's proposition 5. It is without merit.

█ IV. Petitioner makes application for attorney fees for services rendered in this appeal and reimbursement to her attorneys for money advanced since November 23, 1971. A certificate of her attorneys showing in chronological order the type of service rendered and the appropriate time spent is attached to the application.

We first consider the expenses for which counsel seeks reimbursement. Those items relating to costs for the trial transcript, printing the briefs and arguments are properly taxable as court costs which will be taxed against respondent on this appeal. No separate allowance is made for those items. Other items representing money advanced for utility bills are not properly considered in this connection. However, counsel is allowed the sum of $45.55 representing telephone toll charges and expenses for photostatic copies which they have advanced.

From the itemized record attached to the application for fees it is apparent counsel has spent a great deal of time in preparation of this appeal. However, in fixing fees to be paid by the respondent we are limited to the assets from which this item can be paid. Like most cases of this type there are more needs and expenses than money with which to pay.

Without in any way attempting to place a valuation on the services of petitioner's attorneys or what they should be paid, we simply determine what portion thereof should be paid by respondent. Petitioner should be allowed a fee of $500 toward her attorney fees for services rendered on this appeal.

We wish to emphasize for the benefit of the litigants that in reaching our determination in this matter only those matters which have been properly presented by the record have been considered.

Except as modified with respect to the allowance of attorney fees and expenses advanced, the decree is affirmed.

The matter is therefore

Affirmed and remanded with directions to modify.