In re the MARRIAGE OF Barbara ZOELL-
NER and Barton K. Zoellner.

Upon the Petition of Barbara ZOELLNER,
Appellant,

and Concerning Barton ZOELLNER,
Appellee.

No. 55989.

Supreme Court of Iowa.

June 26, 1974.

Rehearing Denied July 29, 1974.

Lundy, Butler, Wilson & Hall, Eldora, for appellant.

Whitesell Law Firm, Iowa Falls, for appellee.

MASON, Justice.

This appeal by petitioner-wife from the trial court's decree in a dissolution proceedings under chapter 598, The Code, is limited to those provisions of the decree dealing with the property of the parties, maintenance of the wife and children and other financial matters arising from termination of the marital relationship.

May 11, 1972, Barbara Zoellner filed petition in the Hardin district court seeking dissolution of her marriage to Barton K. Zoellner. She asked custody of the parties' minor children, a division of the real and personal property accumulated by the parties, alimony, suit money and attorney fees.

Respondent in answer admitted some paragraphs of the petition and denied others including the allegation concerning the breakdown of the marital relationship.

The second day of trial respondent admitted in open court there had been a breakdown of the marital relationship between the parties to the extent the legitimate objects of matrimony had been destroyed and there remained no reasonable likelihood the marriage could be preserved. At this point counsel for the parties stated in open court that they had agreed on the following matters: (1) that custody of the minor children should be placed in petitioner, subject to rights of visitation by the respondent which should be determined by the court; (2) that the parties had agreed

upon a sale of the real estate, said agreement being incorporated as paragraph 3 of the decree; and (3) that each of the parties would be entitled to the legal title of the automobile presently in his or her possession.

The parties were unable to arrive at an agreement concerning the following matters: (1) visitation rights of respondent with the children; (2) amount of child support and alimony, if any; (3) division of remainder of property; (4) liability for debts; (5) payment of attorney fees of petitioner's attorney; and (6) payment of costs, including expenses incident to trial.

Evidence was then taken bearing upon the matters which were in dispute. The trial court dissolved the marriage and incorporated detailed findings of fact as to the financial matters in its decree.

Before considering the issues presented for review by this appeal some factual background of the marriage is deemed relevant.

Barton Zoellner and Barbara Zoellner were married August 21, 1965, in Marinette, Wisconsin. It was the first marriage for both parties. At time of trial both were 29 years of age and in good health. Barton is a graduate of the University of Wisconsin at Oshkosh with a degree in economics; he is employed as a credit manager for the Ralston Purina Company working out of Iowa Falls. Barbara has a Bachelor's Degree in speech pathology from the University of Wisconsin at Madison and a Master's Degree in the same field from the University of Northern Iowa. The parties have two children, Angela, born December 4, 1966 and Adam, born December 24, 1968.

After their marriage in 1965 Barton completed the last year of his education while Barbara worked full time as a speech therapist at an Oshkosh hospital. In June or July 1967 the parties moved to Iowa Falls where Barton continued his employment for Ralston Purina. Over Bar-

bara's objection that she wished to be at home with the children, Barton insisted she return to work because otherwise they would not have enough money to "make it." Barton made arrangements with the County Superintendent of Schools and Barbara went back to work as a speech therapist; she worked four days per week at the time of trial but could work as few as two days or as many as five. She disliked being away from the children and wished to work only three days per week.

The court decreed that custody of the two minor children be awarded to Barbara; Barton was to pay child support of $250 per month until the older child graduated from high school, married, became self-supporting or died, whichever occurs first, whereupon the amount would be reduced to $150 per month until the younger child graduates from high school, marries, becomes self-supporting, or dies, whichever occurs first.

The court retained jurisdiction to determine responsibility of the parties for the higher education (beyond high school) of the children upon such notice as the court shall prescribe. Barbara was not awarded alimony.

Under the distribution of the property either by virtue of the court's decree or stipulation of the parties Barbara received household goods, appliances and fixtures (these included all living room, dining room, family room, master bedroom and child bedroom and patio furniture, washer, dryer, stove and refrigerator); color TV; power lawn mower; snow blower; and movie camera and projector. She was also awarded a 1967 Mustang; by stipulation Barton retained title and assumed indebtedness and lien of $800 thereon. The evidence disclosed the car had 91,000 miles on it at that time, was somewhat unreliable and was essentially unsuited for use by Barbara and the children because of its small size and lack of safety features. Barbara intended to purchase a new car in the near future. It was estimated a new

medium size Ford or Mercury would cost approximately $3300 and would carry a monthly payment of approximately $115.

Barton was awarded the following property: furniture, fixtures and appliances presently in the dwelling occupied by him consisting of two chairs, a card table, table lamp, roll-away bed, portable TV and TV trays; grand piano; personal property given the parties by his parents; ice boat; power tools; 1972 Mercury car with an indebtedness of $2550 thereon; ownership of a life insurance policy; and stereo.

*The home:* The parties built a home in Iowa Falls. Title to the property is in Barbara's name alone; the house had an approximate value of $35,000; at time of trial it carried an encumberance of $26,348.40. Under the decree it was not to be sold for less than $38,500 before June 1, 1973. If not sold by that date Barton could purchase it for $35,000, the purchase price payable by cash by June 10, 1973. Barbara and the children could continue to occupy the home until June 10 or until a purchaser took possession, whichever was later. All sale costs and the mortgage balance were to be deducted from the sale proceeds and the remainder was to be equally divided between the parties.

Before division of the proceeds of the sale of the home the respective attorneys were to be paid as follows: Barbara's attorney—$529.65 for unreimbursed advancements; Barton's attorney—$186.55 for amounts advanced for depositions. In addition, each party's attorney was to be paid $2000 as partial fee.

*Debts:* Barbara was ordered to pay debts to her parents ($100); David Hansen ($175); Mr. Johnson ($100); Younkers ($60); Grahams ($80); and all monthly installments on real estate mortgage until June 10, 1973 or until a purchaser took possession thereof, whichever is later ($197.91 per month). Barton was to pay the debts owed to the credit union (time of trial, balance of $1600, payable $75 per month); American State Bank of Mason

City (balance of contract on grand piano $1000, payable $50 per month); all insurance premiums on real estate ($16 per month); Sears ($190 at $15 per month); Penneys ($90 at $10–15 per month); Master Charge ($390 at $20–25 per month); Kucharos ($40); Lutheran Mutual ($525); Wallen McAdams ($35); and house taxes ($1050).

*Barbara's financial status:* She earns gross pay of $8848 for four days work a week; on a 12-month basis this amounts to take-home pay of $547 per month. As noted above she pays the monthly mortgage installments and will have rent payments following sale of the home. At time of trial her monthly expenses including the mortgage installments amounted to approximately $725 per month. This did not include a projected car payment of $115 per month. If Barbara worked only three days per week her income would be reduced by 25 percent to a gross of $6636.00 with take-home monthly pay of approximately $400. At time of trial virtually all of her income, including child support, was spent each month.

*Barton's financial status:* Barton's monthly gross income is $1300; his annual gross including bonus is thus over $16,000. Monthly deductions total $446 including the amount owed the credit union which he was ordered to pay by the court. The further deduction at time of trial of $104 was for purchase of company stock. Such purchase is essentially mandatory. The stock is purchased at the market value and the purchaser is given one certificate free for each three purchased. He had 20 shares at time of trial which could be liquidated at his convenience; over the past three years the stock was apparently liquidated almost immediately. In his work Barton drives a great many miles, · a projected total of 40,000 in 1972. He is reimbursed by the company at 12 cents a mile for all company travel; he is further reimbursed for any other business related expenses. He also received a yearly bonus; in 1971 it was $685 and in 1970, $766. His monthly living expenses are approximately $435; monthly payments on the various debts approximately $610; adding $250 in child support the total monthly expense is approximately $860 (the above are taken from trial testimony, not the depositions or parties' briefs). (The calculated figures are approximate because some figures have been rounded off and a medium figure computed when payments are indeterminate. However, they are essentially correct.)

Petitioner's appeal presents the following issues for review: (1) should the $2000 fees awarded to attorneys for both parties, plus advanced expenses of attorneys for both parties, been deducted from the proceeds of the sale of the parties' home prior to division of the sale proceeds between the parties?; (2) should petitioner have been awarded alimony?; (3) was the child support awarded sufficient?; (4) was the trial court correct in failing to, (a) require respondent to make mortgage payments, (b) require respondent to mantain hospitalization and medical insurance on the children if he should leave the employ of Ralston Purina, (c) have respondent's life insurance policies held as security for child support payments, and (d) require respondent to pay certain debts assessed to petitioner?

These issues will be considered in slightly different order than stated above.

The case is in equity, therefore our review is de novo. Rule 334, Rules of Civil Procedure. The court gives weight to the fact findings of the trial court, but is not bound by them. Rule 344(f)(7), R.C.P.

■ I. The court stated in its decree, "that during the continuance of his employment by Ralston Purina Co., the respondent shall maintain the same hospitalization and medical insurance coverage on the children as is presently in force." Petitioner contends that under this provision if Barton discontinued employment with Ralston Purina he would no longer be required to provide coverage; the clause

would allow a change in support without any change in circumstances except that of respondent's employer. For example, if Barton took a higher paying job with another company he would no longer be required to provide coverage.

It would seem to be a common occurrence for the father to be ordered to maintain health insurance for the children; such is basically an element of support. From the decree it is obvious Barton was to provide health insurance for the children; providing for its discontinuance merely upon change of employment is inconsistent and inequitable. The decree should be changed so as to require respondent to maintain hospitalization and medical insurance for each child until each graduates from high school, marries, becomes self-supporting or dies. Any coverage should be substantially equal with that now provided while Barton is employed by Ralston Purina.

■ II. Barton owned several life insurance policies: Madison National ($10,000); Lutheran Mutual (two policies); Bankers Life; he received all the policies. Barbara contends some or all should have been held in trust with the children as beneficiaries to guarantee their support should Barton die. Respondent offered to place the Madison National policy in trust; petitioner sought to have all three policies included; trial court awarded all to respondent. The two Lutheran Mutual policies were apparently in the nature of gifts to Barton from his parents. He is to pay them back, however; for their security the parents were named as beneficiaries. The Bankers Life policy is a mortgage insurance policy; it was to be cancelled upon sale of the home. Under these circumstances the court properly awarded these three to respondent.

■ The parties' agreement, not followed by the court, was to place the Madison National policy in trust. It is a sensible idea; perhaps the court thought Barbara had already received enough. Since this is de novo review the trust arrangement could be allowed. The parties agreed the Madison National policy be held in trust. It is the view of the court that the trust should be so established. Provision could be made for it to terminate when the support payments ended if respondent so desired.

III. In another contention urged under what has earlier been designated the fourth issue presented for review by this appeal petitioner asserts the court erred in directing her to pay the debt owed her parents, David Hansen, Mr. Johnson, Younkers and Grahams. She simply argues respondent is in a better position to pay these debts than she is. Respondent in reply asserts he is not.

■■ The $175 debt owed attorney David Hansen was for fees in the previous dissolution case which was apparently dismissed. Prior unpaid legal expenses in a divorce action which has been dismissed are the responsibility of the litigant in the action, not the other party in a later action. Conkling v. Conkling, 185 N.W.2d 777, 787 (Iowa 1971); 27A C.J.S. Divorce § 216, pp. 938–939. Since this amount is not recoverable as costs in this action it would be inequitable to assess them to respondent as a general obligation of the parties. They should be Barbara's responsibility.

■ The other debts were for living expenses borrowed from petitioner's parents and a Mr. Johnson and the amounts owed to department stores. All these apparently arose after the parties separated. Given the many debts assumed by Barton and the nature of these debts, trial court properly ordered Barbara to pay them.

IV. The underlying theory of the contentions urged by petitioner in the remaining issues presented for review is that the decree was inequitable and unjust in regard to the extent of respondent's obligation to furnish child support, the denial of periodic payments of alimony for petitioner and division of the proceeds from the sale of the homestead.

Section 598.21, The Code, provides:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be *justified.*

"Subsequent changes may be made by the court in these respects when circumstances render them *expedient.*" (Emphasis supplied).

In our de novo review it thus becomes our responsibility to ascertain whether the court's decree prescribes an equitable and just determination of property rights and award of support money and whether the court appropriately refused to supplement the property settlement with an allowance of alimony.

█ In seeking to prescribe an equitable and just distribution of property rights and award of support money the trial court properly invoked the several criteria enumerated by this court in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding any consideration of evidence of the conduct of the parties insofar as it tended to place fault for the marriage breakdown on either spouse.

The record made as to financial matters is a mixture of testimony, stipulations and statements of counsel to the court as to what was and what was not in dispute, the disputed items to be decided by the court.

As pointed out, the trial court ordered that prior to division of the proceeds from sale of the home attorney fees and expenses were to be deducted therefrom. In effect, therefore, each party paid his own attorney fees. Barbara contends the court erred in not awarding her a greater amount to apply to her attorney fees and costs, and not entering judgment against Barton for the total amount, and in allowing his attorney fees to be deducted prior to the division of the proceeds.

█ Ordinarily, a litigant is not required to pay his opponent's attorney fees, but under section 598.11, The Code, the court may order a litigant to pay the adverse party a sum "to enable such party to prosecute or defend the action." Conkling v. Conkling, 185 N.W.2d at 787 and In Re Marriage of Romig, 207 N.W.2d 780, 783–784 (Iowa 1973). Attorney fees are not recoverable as a matter of right. Any such allowance made depends upon the wife's financial needs and the ability of the husband to satisfy them. Geisinger v. Geisinger, 202 N.W.2d 44, 47 (Iowa 1972). The payment of attorney fees is necessarily limited by the other party's ability to pay. In Re Marriage of Tjaden, 199 N.W.2d 475, 479 (Iowa 1972). Elements to be considered in determining reasonable attorney fees are set out in In Re Marriage of Jennerjohn, 203 N.W.2d 237, 245 (Iowa 1972) and In Re Marriage of Jayne, 200 N.W.2d 532, 534 (Iowa 1972).

█ The net proceeds from the sale of the house would hopefully be approximately $8000. From this amount there was to be deducted $4716.20, representing an allowance for attorney fees and expenses incurred. The balance was then to be divided equally between the parties.

As stated, petitioner takes the position the allowance made to her for attorney fees was too small and in any event respondent should have been ordered to pay the amount awarded her from his assets. She also maintains that by ordering the amount of fees and expenses awarded to her and the $2186.55 to be deducted from the sale proceeds before distribution, the amount petitioner would receive from the sale was reduced accordingly. The fact deduction of fees and expenses would reduce the amount petitioner would receive in an equal division of the proceeds hardly admits of argument, but this is not the point. The parties had incurred certain expenses as a result of the breakdown of this marriage which had to be paid. It has not been demonstrated under this record in

what other manner such indebtedness could be paid.

We have considered petitioner's arguments advanced in support of her position but our de novo review compels the conclusion the allowances and the amounts fixed by the trial court were justified in the circumstances.

Therefore, the first issue presented for review by this appeal is answered in the affirmative.

V. The next question is whether petitioner should have been awarded alimony under this record.

An allocation of alimony and the awarding of property rights have a different purpose but are closely related in determining the amount to be awarded. Knipfer v. Knipfer, 259 Iowa 347, 351–353, 144 N.W. 2d 140, 142–144; Schantz v. Schantz, 163 N.W.2d at 405.

*Schantz* sets out criteria for an award of alimony. See also In Re Marriage of Cook, 205 N.W.2d 682, 684 (Iowa 1973); In Re Marriage of Smith, 207 N. W.2d 548, 551 (Iowa 1973); and In Re Marriage of Schroeder, 209 N.W.2d 24, 27 (Iowa 1973). Fault, of course, is not to be considered. In Re Marriage of Williams, 199 N.W.2d 339 (Iowa 1972). Part of respondent's argument for affirmance in this regard is that Barbara's needs are filled by her income and support allowance. But, it has been stated that section 598.21, The Code, 1971, does not limit this court's consideration of alimony solely to the element of the wife's basic needs. See Hutcheson v. Hutcheson, 197 N.W.2d 594, 597 (Iowa 1972).

Trial court properly took the property division into account in determining whether alimony should be awarded. Under the decree the household goods and furnishings awarded to the petitioner had an original cost of $4900 as stated in respondent's reply to an interrogatory propounded by petitioner. We are not told the value at the time of trial.

Under the criteria set out in *Schantz* the trial court was justified in not awarding alimony. This is not because of the property division solely but because of Barbara's situation and qualifications also. She is young, healthy, well educated and employed in a quite well-paying job.

The second issue is answered in the negative.

VI. Another issue presented for review is the sufficiency of the award for child support.

This language in what is now section 598.17, The Code, is new:

"Dissolution of marriage—evidence. A decree dissolving the marriage may be entered when the court is satisfied from the evidence presented that there has been a breakdown of the marriage relationship to the extent that the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved.

"The court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse."

The object and purpose of this section and section 598.21 set out earlier is to authorize the courts in dissolution of marriage proceedings to enforce, after termination of the marital relationship, the legal as well as moral duty of support between parent and child. In Re Marriage of Carney, 206 N.W.2d 107, 112 (Iowa 1973).

Later in the *Carney* opinion the court said:

"At common law a father is primarily liable for the support of his children. However, in this state by reason of section

597.14, The Code, which provides the reasonable and necessary expenses of the family are chargeable upon the property of both husband and wife, the view prevails that the same legal obligation rests upon both husband and wife, not necessarily equally but proportionately according to their ability and circumstances. * * * [citing authorities]."

In addition to the authorities cited in the quoted opinion see also Yansky v. Yansky, 172 N.W.2d 114, 117 (Iowa 1969); McDonald v. McDonald, 183 N.W.2d 186, 189 (Iowa 1971); Dworak v. Dworak, 195 N.W.2d 740, 743 (Iowa 1972); and Spaulding v. Spaulding, 204 N.W.2d 634, 636 (Iowa 1973).

■ It has frequently been said by this court that in making a child support allowance each case is peculiarly dependent on its facts. Factors to be considered are parties' age, health, present earning capacity, future prospects, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, duration of the marriage, indebtedness of each or both, and any other relevant factors which might assist the trial court in reaching a just and equitable decision. Arnold v. Arnold, 257 Iowa 429, 440, 133 N.W.2d 53, 60; Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 698, 145 N.W.2d 456, 464; Morris v. Morris, 163 N.W.2d 549, 550 (Iowa 1968); and Yansky v. Yansky, 172 N.W.2d at 117. Stated somewhat differently, a child support allowance cannot be made or evaluated in a vacuum; the entire record must be examined. In Re Marriage of Campbell, 204 N.W.2d 638, 639 (Iowa 1973). The difficulty is not in the applicable legal principles but in determining what is justified under the facts presented. No two cases are alike and therefore precedents are of little value. Sherrad v. Sherrad, 175 N.W.2d 411, 412 (Iowa 1970) and Geisinger v. Geisinger, 202 N.W.2d at 46.

■ This court has expressed the view that if it reasonably can be avoided a mother in custody of young children should not be compelled upon dissolution of her marriage to work outside the home. See Youel v. Youel, 218 N.W.2d 449 (Iowa 1974); In re Marriage of Dowie, 215 N.W.2d 276, 277–278 (Iowa 1974); In re Marriage of Matson, 215 N.W.2d 358, 360 (Iowa 1974); In re Marriage of Beeh, 214 N.W.2d 170, 174 (Iowa 1974); and In re Marriage of Campbell, 204 N.W.2d at 639.

At time of trial the older child was in kindergarten and the younger one was in nursery school. During the marriage petitioner resisted going back to work—she had worked full time pretty much supporting the two of them while respondent attended college. Petitioner had expressed the view she should be with the children as much as possible. Nevertheless, after moving to Iowa Falls respondent went ahead and contacted the county superintendent, ascertained there was a position available and what petitioner would need to be certified. Petitioner was required to get a master's degree and at respondent's insistence returned to work.

She had been working three days a week but increased to four days a week when the parties separated. A three-day work week would reduce Barbara's monthly income by approximately $150. It is true her expenses would be somewhat less. After Barton's payment of his share of the debts he would have approximately $150 to $175 more in disposable income per month. There is some dispute in the briefs and arguments as to the exact amount of respondent's take-home pay. He admits an amount of $978.92. Petitioner contends the amount is $1028.92. The difference of $50 is in the amount of his gross pay.

The record discloses respondent's salary has increased from $575 per month in June of 1966 to $1350 in October 1972.

By stipulation of the parties the Mustang which he does not need because he drives another car was awarded to respondent subject to the encumbrance of $800. A sale of this car and application of the

proceeds to the amount owed the credit union would reduce respondent's indebtedness.

It is the opinion of the court the amount of child support awarded petitioner in the amount of $250 per month should be increased to $400 per month payable under the same terms and conditions as provided in the trial court's original decree. When the amount required of respondent was to be reduced to $150 per month under the provisions of that decree this amount should be fixed at $250 to continue under the same terms and conditions as provided in the trial court's decree.

VII. There remains to be considered petitioner's complaint as to the trial court's decree requiring her to pay the monthly installments on the real estate mortgage in the amount of $197.91 per month until June 10, 1973, or until a purchaser took possession thereof, whichever was later.

Review of the record convinces the court this requirement was just and equitable in the circumstances.

VIII. Both parties filed statements of their attorneys regarding services rendered them respectively in this appeal.

In reference to respondent's statement it is sufficient to say that he shall pay his own attorney fees.

A certificate of petitioner's attorney showing in chronological order the type of services rendered and the approximate time spent is attached to the application.

We will first consider the expenses for which counsel seeks reimbursement. Those items relating to costs for the trial transcript and printing briefs and arguments are properly taxed as court costs which will be taxed against respondent on this appeal. No separate allowance is made for these items. Other items representing money advanced for telephone, travel and photo copies in a total amount of $60.20 are allowed and petitioner shall be awarded judgment for such amount.

From the itemized record attached to the application for fees it is obvious counsel has spent a great deal of time in preparation of this appeal. However, in fixing fees to be paid by respondent we are limited to the assets from which this item can be paid. Like most cases of this type there are more needs and expenses than money with which to pay.

Petitioner is allowed an additional sum of $1000, payable within six months of the date of the filing of this opinion, toward her attorney fees for services rendered on this appeal.

Judgment shall be entered in the trial court for such amounts.

The matter is remanded to the district court for entry of a decree as modified in divisions I, II and VI of this opinion.

Except as so modified the decree is affirmed.

The matter is therefore

*Affirmed and remanded with directions to modify.*