In re MARRIAGE OF George L. FISH and Mary A. Fish.

Upon the Petition of George L. Fish, Petitioner-Appellant,

And Concerning

Mary A. Fish, Respondent-Appellee.

No. 83–959.

Court of Appeals of Iowa.

April 24, 1984.

Theresa M. Semel and Arthur L. Buzzell of Newport & Buzzell, Davenport, Iowa, for petitioner-appellant.

Edward B. de Silva, Jr., of Wells, Brubaker, de Silva, Flynn & Darland, Davenport, Iowa, for respondent-appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ., but considered en banc.

HAYDEN, Judge.

Petitioner appeals from the decree dissolving the parties' marriage. He claims that: (1) the trial court should have provided for joint custody of the parties child with respondent having physical care rather than awarding respondent sole custody; (2) trial court should have allowed petitioner more visitation; (3) the trial court's property division was inequitable due to the court's excessive valuation of some of the parties' assets; and (4) trial court should not have required petitioner to pay part of respondent's attorney fees.

Our review of this equitable proceeding is **de novo**. Iowa R.App.P. 4. While we are not bound by the findings of the trial court, we do give weight to them, especially where the credibility of witnesses is involved. Iowa R.App.P. 14(f)(7).

I. *Child Custody.* Petitioner, George Fish, and respondent, Mary Fish, ages 35 and 34 respectively at the time of trial, were married on August 4, 1973. Their one child, Sarah, was born August 24, 1978. At trial George sought joint custody of his daughter, but agreed that Mary should have physical care of the child. Mary was opposed to joint custody on the grounds that a child needs to know that one person is in charge and would tend to manipulate the parents in a joint custody situation. The trial court ordered the parties to engage in custody mediation counseling. At the end of this counseling the parties filed a stipulation stating that they were unable to agree whether Sarah should attend public or parochical schools. Because of this disagreement, Family and Children Services did not recommend joint custody. The trial court denied joint custody, stating in the decree:

> The child needs to know and understand who has the decision-making authority, and in view of the fact the parties could not discuss or work out any settlement of their disagreements with respect to the child, together with the inability of the petitioner to tolerate close relationship, leads the Court to reject joint custody as being in the best interests of the minor child.

■ The statutory criteria to be considered in awarding custody are found in Iowa Code section 598.41(3) (1983). The overriding concern is the best interest of the child. Iowa R.App.P. 14(f)(15). The statute has been held to express a preference for joint custody. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). One party's opposition to joint custody is merely one factor to be considered by the court; it does not preclude a joint custodial arrangement. *Id.*

■ In this case Mary opposes joint custody because she feels that one person needs to be in charge. The trial court summarized Mary's objection as follows:

THE COURT: I understand exactly. It's just exactly this: In a marriage, if your marriage continues, you have to work out how you'll resolve decision making when you cannot agree. And every family has its own way of working that out, but at some point, they do, because that's the only way the family can go on. So there comes a time, in some families, if they can't agree, the mother makes the decision; in other families, if they can't agree, the father makes the decision. And that may also depend upon what the nature of the—what the nature of the decision is required to be. Furthermore, in every family, in order for it to exist, it stays together, there are times when the decision is made on the spot, and the family has to work out the living with that decision, when there isn't a chance or the opportunity for advance consultation isn't given. What she's saying is when there is no marriage, she cannot see how those problems of getting along, making decisions, can be worked out.

This line of reasoning, which appears from the decree to have been accepted by the trial court, would preclude any joint custody arrangement. Mary's objection is not that she and George will be unable to communicate because of their particular personalities, but that when a family breaks apart it is impossible for any two parents to effectively make decisions for their children because of their separation. Clearly the legislature did not intend for joint custody to be written out of the statute in this manner. Furthermore, we note that the trial court stated on the record that joint custody was not preferred, an assertion which is clearly contrary to current law. *In re Marriage of Weidner*, 338 N.W.2d at 356. Consequently, we have carefully scrutinized the reasons given by the trial court for rejecting George's request for joint custody.

■ Our own **de novo** review of the record convinces us that there was no valid reason to deny joint custody in this case. The parties have shown an ability to communicate and cooperate. They basically agreed on a property division except for some differences as to the valuation of certain assets. Both agreed that Mary should have physical care of Sarah. Although the parties quarreled while living together, there was undisputed evidence that there had been no arguments between them concerning visitation or other decisions affecting the child since the separation. Moreover, at trial Mary opposed the divorce and testified that there had been no breakdown of the marital relationship. She attributed their prior quarreling to George's fatigue from overwork, and claimed that there were no irreconcilable differences between them.

■ The trial court cited the parties' inability to settle disagreements with respect to the child and George's inability to tolerate close relationship as reasons for denying joint custody. However, evidence at trial showed that the parties have been able to settle all minor disagreements regarding Sarah and successfully resolved a major difference by deciding that Sarah should be raised in the Catholic faith. It is true that the parties have been unable to agree upon the proper school for Sarah to attend. The statute, however, does not require that the parties be in accord all the time, but that they be able to communicate with each other regarding the child's needs and support each other's relationship with the child. *See* Iowa Code § 598.41(3)(c) and (e). The record shows that these parties

have been able in the past to resolve major differences regarding Sarah's upbringing and we are confident that they will be able to resolve future differences in the same way.

The supreme court in *Weidner* concluded that joint custody was not in the best interest of the children due to the parties' inability to communicate and the fact that their dislike and mistrust of each other was made clear to the children. *In re Marriage of Weidner*, 338 N.W.2d at 357. The court cited arguments over visitation as one example of the parties' inability to resolve differences, including one occasion when the police had to be called to keep peace. *Id.* at 356. The parties in the present case show none of this immaturity or bitterness which would lead us to reject joint custody.

As for the trial court's reliance on George's inability to tolerate close relationship, the only evidence concerning this in the record is George's testimony that he is a shy person who enjoys periods of solitude. We do not see how this makes joint custody any less feasible in this case.

■ Finally, Mary's concern that it will be impossible to effectively discipline Sarah if she must constantly consult with George is unfounded. George testified that he was not interested in being consulted on minor day-to-day decisions. We do not envision a joint custodial arrangement as a restraint preventing the parent having physical care from taking any action concerning the child on his or her individual initiative. However, major decisions concerning the health, education, and religion of the child should not be made quickly or without consideration with the other parent. Our legislature and supreme court have decided that it is in the best interests of the child to have two parents actively involved in major decision-making if those parents are able to rationally discuss the issues and support each other's relationship with the child. Since the parties in this case have demonstrated an ability to communicate and resolve differences, we conclude that Sarah should have the benefit of joint custody. Therefore, that part of the trial court decree awarding Mary sole custody of the parties' child is reversed. The parties shall have joint custody, with Mary having physical care of the child.

■ II. *Visitation.* The trial court made the following provision for George to visit his daughter in the absence of a contrary agreement between the parties:

a. Petitioner shall be entitled to have the minor child visit with him on alternate weekends from 9:00 a.m. on Saturday until 5:00 p.m. on the succeeding Sunday, the first such weekend visitation to begin June 11, 1983.

b. Petitioner shall be entitled to have the child visit with him from 9:00 a.m. until 8:00 p.m. on alternate holidays, which holidays shall be Fourth of July, Labor Day, Thanksgiving Day, Christmas Eve Day, Christmas Day, Easter Sunday, and Memorial Day.

c. Petitioner shall be entitled to have the child visit with him on her birthday in odd-numbered years, and on Father's Day in each year from 9:00 a.m. until 8:00 p.m.

d. Without regard to petitioner's weekend visitation, the respondent shall be entitled to have said child remain with her on Mother's Day in each year.

e. Petitioner shall be entitled to have said child visit with him for two consecutive weeks during the child's summer vacation from school. The petitioner shall give to the respondent, thirty days' advance notice of when such visitation shall be, and such visitation shall not interfere with the right of the respondent to have the said child be with her on the Fourth of July in the event that it is her turn to have the child on that holiday.

f. To commence the alternate holiday visitation, the petitioner shall be entitled to have the child visit with him on the Fourth of July in 1983.

George argues that he should have been allowed more visitation. Specifically, he requests that he be allowed mid-week visitation. We believe that mid-week visitation, in addition to visitation on alternate

weekends, would involve excessive shifting of the child between parents and could impair the child's sense of stability. We see no problem with the schedule set up by the trial court. Accordingly, we do not disturb the decree on the issue of mid-week visitation.

█ It is appropriate that George's alternate weekend visitation should commence at 5:00 p.m. on Friday and shall continue until 5:00 p.m. on Sunday. We accordingly modify the trial court's decree and order.

█ III. *Property Division.* The trial court made an approximately equal division of property between the parties. George disputes the trial court's valuation of several items awarded to him. In particular, he claims that the Wisconsin residence is not worth $50,000, his personal property in the Wisconsin residence is not worth $5,500, and his personal property in his apartment is not worth $2,500. As for the residence, both parties listed on their respective affidavits of financial status that the Wisconsin property had a market value of $60,000. At trial George testified that while the property was assessed at $60,000, it would probably sell for $50,000. However, he introduced into evidence the report of a real estate appraiser estimating the value at $40,000. We conclude there was sufficient evidence to support the trial court's valuation of the property at $50,000. We also approve the trial court's valuation of George's personal property. George testified that in his estimate he did not include several items which had belonged to him prior to his marriage. The court properly added the value of these items.

█ IV. *Attorney Fees.* An award of attorney fees in a dissolution action is not a matter of right. It depends upon the relative needs and abilities of the parties. *In re Marriage of Zoellner,* 219 N.W.2d 517, 523 (Iowa 1974). Although both parties are employed, George earns substantially more than does Mary. We find that the trial court's order requiring George to contribute $650 to Mary's attorney fees is warranted.

AFFIRMED IN PART; REVERSED IN PART; AND MODIFIED IN PART.

All Judges concur except OXBERGER, C.J., and SACKETT, J., who dissent.

SACKETT, Judge (dissenting in part).

I agree with the majority except that I would grant the mid-week visitation requested by the father.

I agree with the following statement made by Robert F. Cochran, Jr. and Paul C. Vitz:

> When custody is granted to one parent, courts should generally order more visitation with the non-custodial parent than is presently being ordered. Such visitation should include not only weekend time, but time during the week....

*Child Protective Divorce Laws: A Response to the Effects of Parental Separation on Children,* FAMILY LAW QUARTERLY, Volume XVII, Number 3, Fall 1983.

To allow the parent not having physical care to spend time mid-week with a child is important. It allows the parent an opportunity to become involved in a child's day-to-day activities and further charges the parent not having physical care with the responsibility of assisting the child with homework. With cooperation and flexibility between the parents, there should be no problem with such visitation. It is difficult to understand how the visit could be disruptive. Children are frequently away from home in the evening for a variety of reasons—what better reason than to spend time with one's father.

The visitation should also be beneficial to the parent having physical care because it should give that parent time out from parenting with the knowledge that the child is in the care of someone who cares very much for the child.

OXBERGER, C.J., joins in this dissent.