# IN THE COURT OF APPEALS OF IOWA

No. 20-0538
Filed November 30, 2020

IN RE THE MARRIAGE OF BRENDA TERRONES
AND JASON TERRONES

Upon the Petition of
**BRENDA TERRONES, n/k/a BRENDA BOHLKE,**
    Petitioner-Appellant,

**And Concerning**
**JASON TERRONES,**
    Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Black Hawk County, Alan Heavens,

Judge.


        Brenda Bohlke appeals an order denying her request for modification of

physical care. **AFFIRMED.**


        Shanna Chevalier and Lana L. Luhring of Laird & Luhring Law Firm,

Waverly, for appellant.

        Heather A. Prendergast of Roberts, Stevens & Prendergast, PLLC,

Waterloo, for appellee.


        Considered by Bower, C.J., and May and Ahlers, JJ.

**MAY, Judge.**

L.T. is the child of Jason Terrones and Brenda Bohlke. Brenda appeals from an order denying her request for modification of L.T.'s physical care. Brenda contends the district court should have granted her joint physical care or, in the alternative, additional visitation. We affirm.

## I. Factual Background

Jason and Brenda were married in 2011. L.T. was born in 2013. In August 2015, Brenda petitioned for dissolution. In November 2016, the parties stipulated the court should order joint legal custody and shared physical care of L.T. The court entered a decree approving the stipulation and incorporating it by reference.

Brenda began dating Justin Bohlke. Justin owned a home in Iowa City. In December 2017, they began living together after Brenda accepted a new job that required her to live in Iowa City. Meanwhile, Jason continued living in the marital home in Waterloo. Brenda and Justin later had a child together, L.B., who is L.T.'s half-sibling. And Brenda and Justin married.

In February 2018, Jason filed a petition to modify the November 2016 decree. Jason cited "Brenda's permanent move to Iowa City" as the reason for modification. Brenda agreed that her move to Iowa City made a change in custody necessary. Both parties requested physical care of L.T.

In June 2019, the district court entered a modification decree. The court concluded "that Brenda's relocation to Iowa City has caused an unjustified

disruption in the court approved parenting schedule for the child." The court gave Jason physical care of L.T. and granted Brenda substantial visitation.[1]

Less than two weeks after the court entered its modification decree, Brenda accepted a newly-created position and moved to Jesup. Then, in September, Brenda initiated the current action, through which she seeks modification of the June decree. Brenda asks for a return to joint physical care because she now resides about twenty-five minutes from Jason. In the alternative, Brenda requests additional visitation time to include midweek overnight visitations.

The district court denied Brenda's request for joint physical care. But the court awarded her one midweek visitation, ending at 7:30 p.m. Brenda now appeals.

## II. Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). So we review each issue de novo. Iowa R. App. P. 6.907. But we give weight to the fact findings of the trial court, who is "greatly helped in making a wise decision about the parties by listening to them and watching them in person." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted). As Judge Doyle has properly observed:

---

[1] Brenda received visitation on alternate weekends from after school on Friday to Sunday at 7:00 p.m. She also received fifty percent of Christmas break, all of spring break, and "[e]xtended summer visitation beginning the day after school dismisses for the semester and continuing through the end of July each year." Holidays were divided as provided in the original dissolution decree. Jason was allowed alternate weekends—plus some holidays, like his June birthday—during Brenda's extended summer visit.

> [W]e give careful consideration to the findings of the trial court. . . . because the district court, unlike this court on appeal, has the opportunity "to view, firsthand, the demeanor of the witnesses when testifying." A witness's facial expressions, vocal intonation, eye movement, gestures, posture, body language, and courtroom conduct, both on and off the stand, are not reflected in the transcript. Hidden attitudes, feelings, and opinions may be detected from this "nonverbal leakage." Thus, the trial judge is in the best position to assess witnesses' interest in the trial, their motive, candor, bias and prejudice.

*In re Marriage of Rademacher*, No. 11-0798, 2011 WL 5868041, at *3 (Iowa Ct. App. Nov. 23, 2011) (citations omitted). We will affirm unless the district court "failed to do substantial equity." *Boatwright v. Lydolph*, No. 18-0532, 2019 WL 719026, at *1 (Iowa Ct. App. Feb. 20, 2019) (citation omitted).

### A. Physical Care

The real focus here is physical care. Brenda bemoans the district court's refusal to return to joint physical care. Jason defends the court's decision.

A parent who wants to modify the physical care provisions of a decree—or, as here, a modified decree—faces a "heavy burden." *In re Marriage of Kelly*, No. 19-1295, 2020 WL 3571863, at *2 (Iowa Ct. App. July 1, 2020) (citing *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995)). First, the parent "must establish by a preponderance of the evidence that there has been a substantial change in circumstances since the . . . last modification." *Jacobo*, 526 N.W.2d at 864. "The changed circumstances [must] meet three criteria: (1) the court did not contemplate them when entering the [prior modification]; (2) they were 'more or less permanent, not temporary,' and (3) they related to the welfare of the children." *Kelly*, 2020 WL 3571863, at *2 (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

If the parent crosses this first hurdle, they still face a second. The nature of this second challenge depends on the relief sought. If the parent seeks to (1) "wrest physical care from" the other parent or (2) move the child out of joint physical care and into physical care with the requesting parent, the requesting parent must prove "superior parenting ability," that is, "an ability to minister more effectively to the children's well-being" than the other parent. *Id.* at *3 (citation omitted). But if the parent is only asking to be placed on "equal footing"—if she is only asking to move the child from physical care with the other parent to joint physical care with both parents—then the requesting parent is not required to prove superiority. *Id.* Instead, the parent must only show joint physical care is in the child's best interest. *Id.*

With these principles in mind, we first consider whether Brenda proved the kind of substantial change necessary to justify a change in physical care. In her petition for modification, Brenda claimed her change of residence was the substantial change that justified modification. But Brenda had four residences in four-and-a-half years. We question whether Brenda's most recent move is "more or less permanent, not temporary."[2] *See Frederici*, 338 N.W.2d at 158 ("The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.").

---

[2] We also question whether or not it was a change "not . . . contemplated by the court" during the last modification proceeding. *See Frederici*, 338 N.W.2d at 158. After the prior modification decree was entered, Brenda filed a motion to amend or enlarge under Iowa Rule of Civil Procedure 1.904. Her motion requested, among other things, that the court would "determine that, should she relocate to within 30 air miles of Waterloo, Iowa, the shared care arrangement will resume." That is essentially the same argument she is making in this second modification action.

Even assuming Brenda has shown the requisite change in circumstances, however, we do not believe she proved joint physical care is in L.T.'s best interest. *See Kelly*, 2020 WL 3571863, at *3.

Iowa Code section 598.1(4) (2019) defines joint physical care as an arrangement in which "both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent." "Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). "Given the fact that neither parent has rights superior to the other with respect to the child's routine care, joint physical care also envisions shared decision making on all routine matters." *Id.*

Of course, a court should order joint physical care only if it will serve the child's best interest. *See* Iowa Code § 598.41(5)(a). And a "multitude of factors go into a determination of whether joint physical care is warranted." *In re Marriage of Geary*, No. 10-1964, 2011 WL 2112479, at *2 (Iowa Ct. App. May 25, 2011); *see* Iowa Code § 598.41(3). "Where both parents are suitable caregivers," though, the propriety of joint physical care will usually turn on "four key considerations: (1) stability and continuity of caregiving; (2) the ability of [the parents] to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) the degree to which parents are in general agreement about their approach to daily matters." *Geary*, 2011 WL 2112479, at *2 (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007)).

Applying these factors here, we note initially that the parties lived under a joint physical care regime until the June 2019 modification order was entered. Like the district court, we believe this history is "Brenda's strongest argument for joint physical care" now.

Also like the district court, though, we believe other important considerations weigh against joint physical care. As the court observed, "Brenda's move to Iowa City . . . was the starting point to a series of events that resulted in a substantial deterioration" in Brenda and Jason's relationship. Now, "the degree of conflict between Brenda and Jason is unusually high." Their "ongoing bitterness" and "clear lack of mutual respect and trust" impedes their ability to co-parent. They "have significant problems communicating with each other," sometimes using attorneys to address parenting issues. And they fight about "the biggest and smallest" of concerns, such as:

> how much deviation from the care schedule is appropriate, what therapist and type of therapy was best, whether L.T. was signed up for counseling fast enough, the cause of L.T.'s health issues, whether L.T. is overall adjusted and happy, the cause of L.T.'s sadness when she is sad, whether L.T. believes she has adequate time with Brenda, how day-care drop-offs should . . . work, how school pick-ups should work, how Monday dance drop-offs should work, how many goodbyes are too many, how much "windshield time" is too much, the care schedule for L.T.'s birthday, whether a mid-week visitation is appropriate, how to best prepare L.T. to be an independent person, how much L.T. needs a routine, what hospital L.T. should go to when a medical issue arises, whether L.T. should wear a headband for a school picture, whether a headband change should have been communicated beforehand, and where each parent should sit at a sporting event.

Even so, Brenda urges that *In re Marriage of Orte*, 389 N.W.2d 373 (Iowa 1986) weighs in favor of joint physical care so that L.T. can live with L.B. In *Orte*, the court "expressed a strong interest in keeping children of broken homes

together." 389 N.W.2d at 374 (noting that "these general principles should govern awards of physical care in cases of half siblings as well as others"). And, indeed, a joint physical care arrangement may provide additional opportunities for contact between L.B. and L.T. Even so, the existence of a half-sibling does not automatically make joint physical care appropriate. Even with a half-sibling involved, we have declined to order joint physical care when other circumstances showed it was not in a child's best interest. *See, e.g.*, *In re Marriage of Luethje*, No. 19-0768, 2020 WL 375946, at *4–5 (Iowa Ct. App. Jan. 23, 2020); *see also Orte*, 389 N.W.2d at 374 (noting the court may "depart from this general rule" when doing so "may better promote the long-range interests of children" (citation omitted)). And in this case, we agree with the district court that joint physical care is not in L.T.'s best interest because of the high degree of conflict between the parents, their problems with communication, their lack of mutual respect and trust, and their inability to agree on so many things.

Although joint physical care once worked for this family, it is no longer consistent with L.T.'s best interest. We decline to order it.

### B. Visitation

As an alternative to joint physical care, Brenda asks this court to grant her midweek overnight visitations. In reviewing Brenda's request, we recognize "the reasonable discretion of the trial court to modify visitation rights." *In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994). We "will not disturb its decision unless the record fairly shows it has failed to do equity." *Id.*

Under the June 2019 decree, Brenda had no midweek visitation. In the present action, the district court modified the June 2019 decree by giving Brenda

visitation on Wednesday nights until 7:30 p.m. Also, because Brenda takes L.B. to the same daycare L.T. attends, Brenda gets to see L.T. every school day.

Unsatisfied, Brenda asks us to further expand her visitation by adding a midweek overnight. But we believe the district court chose an appropriate balance between (1) allowing L.T. to spend time with Brenda and L.B. during the week and (2) avoiding excessive disruption of L.T.'s weekly schedule. Because the district court did not fail to do equity, we decline to disturb its decision. *See Salmon*, 519 N.W.2d at 95; *In re Marriage of Gulsvig*, 498 N.W.2d 725, 727 (Iowa 1993) (rejecting request for midweek visitation rights); *In re Marriage of Ertmann*, 376 N.W.2d 918, 922 (Iowa Ct. App. 1985) (ordering Wednesday evening visitations from 4:30 p.m. until 8:30 p.m.); *In re Marriage of Fish*, 350 N.W.2d 226, 230–31 (Iowa Ct. App. 1984) (rejecting midweek visitation as it would "involve excessive shifting of the child between parents and could impair the child's sense of stability"); *see also In re Marriage of Sheriff*, No. 14-1410, 2015 WL 4646493, at *2 (Iowa Ct. App. Aug. 5, 2015) ("Further, there is no independent requirement for midweek visitation.").

Brenda also suggests we should reduce her summer visitation and, in return, provide additional visitation during the week. But her appellate brief does not state what specific parts of her summer visitation should be reduced. And, other than requesting a midweek overnight visit, her brief does not specify how her visitation during the week should be expanded. As explained, though, we believe the district court appropriately decided on a midweek evening visit rather than an overnight. And, viewed as a whole, we believe the visitation now available to Brenda is "liberal" and provides "the child the opportunity for the maximum

continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). Plus the current arrangement provides substantial time for L.T. and L.B. to be together. *See Orte*, 389 N.W.2d at 374. We decline to alter visitation.

### C. Appellate Attorney Fees

Jason requests attorney fees on appeal. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to award fees, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal quotation marks and citation omitted).

After considering all relevant factors, we decline to award attorney fees. But we tax all costs of this appeal to Brenda.

### III. Conclusion

We find no grounds to disturb the district court's order. We affirm.

**AFFIRMED.**