MARGARET K. DAUGHERTY, appellant, v. DONALD DAUGHERTY, appellee.

No. 52444.

(Reported in 151 N.W.2d 569)

JUNE 6, 1967.

David D. Mitchell, of Cedar Rapids, for appellant.

William J. Matias, of Cedar Rapids, for appellee.

BECKER, J.—In this case plaintiff-wife sued for divorce on grounds of cruel and inhuman treatment and sought custody of the minor child, Bradley Alan Daugherty. Defendant counterclaimed for divorce on the same grounds and also sought custody of Bradley. The parties were married on July 22, 1965. Bradley was born November 24, 1965. The divorce petition was filed in January 1966. The wife was 18 years old at the time of the marriage and the husband was 20. The trial court awarded the divorce to the counterclaimant-husband and placed custody of the nine-month-old child in him. This court, upon proper application, granted a stay order allowing the mother to retain custody pending appeal by her. We affirm as to the divorce but reverse and remand for further evidence that portion of the decree that fixes custody of the minor son.

The parties lived together less than six months. Essentially plaintiff's case consists of evidence of physical abuse. Defendant

struck plaintiff in the face and slammed her up against the wall. This occurred at a dance hall where defendant was working as the leader of the band. There is corroboration of this incident by plaintiff's friend who was there and also by defendant's admission. But defendant's version is that he slapped plaintiff because she accosted him at the dance, was hysterical at that time, and he acted to calm her down. Both parties agree that plaintiff had convulsions during pregnancy, and was extremely nervous after pregnancy.

The other overt incident furnished by plaintiff occurred after separation. Defendant is accused of coming to plaintiff's mother's home and forcibly dragging her out to the car. Plaintiff is corroborated in this evidence by her mother. Defendant denies the use of force in getting plaintiff to go with him that night and states that he was trying to straighten things out. On this ride plaintiff says defendant threatened to drive her into the river and force mud down her throat. Defendant denies this and states that he was trying to effect a reconciliation.

Plaintiff also testified that she had seen defendant at another woman's apartment and waited for him to leave. He did not leave until six o'clock in the morning. She further stated that all of these things have seriously affected her nerves, that the convulsions during pregnancy were due to defendant's treatment of her and that she is presently under doctor's care and taking medication for her nerves due to defendant's actions.

Defendant's testimony is a great deal different. His case indicates that plaintiff is a heavy drinker, that she is frequently intoxicated, that she constantly wanted something to drink and threw a fit and became very angry if he would not buy her something to drink.

Defendant's evidence also showed that plaintiff was frequently in the company of other men. Testimony by the landlady of one Frank Thompson and several women who knew both parties indicates that plaintiff was in fact guilty of adultery during the couple's married life. Further evidence indicates that Frank Thompson and another man, who were then with plaintiff, left her when defendant appeared in the neighborhood and beat him up badly enough to put him in the hospital for obser-

vation for about four hours. There is also evidence that plaintiff promoted bad feelings between Thompson and defendant. It is a fair inference that the beating incident was a result of these actions by plaintiff. Some of the foregoing evidence is by admissions made to witnesses, some by direct observation by the witnesses and some by circumstantial evidence. The evidence is strong enough to convince us that the trial court was correct in granting the divorce to defendant on grounds of cruel and inhuman treatment.

I. We need not dwell long on the complaint that defendant's evidence did not justify the court's action in granting him a divorce. The conduct of one spouse towards others of the opposite sex may amount to such inhuman treatment as to be grounds for divorce. Arnold v. Arnold, 257 Iowa 429, 133 N.W.2d 53; Sullivan v. Sullivan, 244 Iowa 838, 56 N.W.2d 910. Adultery may itself constitute cruel and inhuman treatment sufficient to endanger the life of the other spouse. Schnor v. Schnor, 235 Iowa 720, 17 N.W.2d 375, 157 A. L. R. 628. The evidence of the beating which caused the trip to the hospital along with defendant's testimony that plaintiff's actions caused him constant concern, worry, loss of sleep, and nervousness are sufficient to justify granting the divorce to defendant.

II. Both parties agree that the real problem before us now is that of the proper order pertaining to custody of the baby. The record is so barren of evidence upon which an informed judgment could be made that we conclude the case must be returned to the trial court for evidence on that subject.

The court apparently decided on the evidence available to it that plaintiff's proven poor moral character, drinking habits and emotional qualities made it necessary to place custody in the father. The statements made in Bell v. Bell, 240 Iowa 934, 937–939, 38 N.W.2d 658, are very much in point:

"Plaintiff's heaviest guns are directed at defendant's moral character, alleged to be such as to disqualify her for the custody of her daughter. He argues the sole question is: 'Would the best interests * * * of the child be *equally* or *better* advanced * * * by awarding the custody of the child to the father?' We do not deem this an accurate statement of the issue. Our statute (sec-

tion 668.1, Code, 1946) makes *both* parents the natural guardians of the persons of their minor children and *equally* entitled to their care and custody. Doubtless the statute assumes the continuance of the normal family relation. It contemplates joint custody—a sort of joint tenancy as distinguished from a tenancy in common. The statute breaks down when as here joint custody becomes impossible and controversy arises between parents.

■ "When this happens the one seeking to take actual custody from the other has the burden of showing some superior claim based on his ability to minister, not *equally,* but *more,* effectively to the child's well-being.

"Plaintiff seeks to carry this burden by asserting that 'defendant is an immoral person and is not a fit or proper person to have the care or custody of said minor child.' Again he alleges 'that the defendant is a person of very bad character and ill repute, unclean and is not the kind of person to properly care for said child.' [emphasis in original opinion].

"\* \* \* It has been repeatedly said that usually the mother is best fitted to care for children of tender age. Caldwell v. Caldwell, 141 Iowa 192, 195, 119 N.W. 599; Wood v. Wood, 220 Iowa 441, 446, 262 N.W. 773; Maron v. Maron, supra (238 Iowa, at page 591). Unfortunately, perhaps, the court is not able to create conditions but must choose between the alternatives presented. That is our plight here. No situation is ideal based upon disrupted family relationship."

■ "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound by them." Rules of Civil Procedure, 344(f)(7). Where the evidence is insufficient for the fair de novo determination of an important issue, we can and should return the case for more evidence on the subject. Lessenger v. Lessenger, 258 Iowa 170, 138 N.W.2d 58, 61; Punelli v. Punelli, 260 Iowa 549, 555, 149 N.W.2d 784, 788.

In quoting the principles set forth in Bell v. Bell, supra, we do not mean to express any opinion on the final disposition of child custody in this case. No judgment can or should be made until sufficient evidence is brought before the trial court.

■ Both parties in their pleading asked for custody of this

infant son. Neither gave any real attention to developing evidence to support his or her position on the issue. The trial court, and this court on review de novo, are each entitled to more specific evidence of the ability of the parents in this regard. The real question is, How will the best interest of the child be best served? Herron v. Herron, 258 Iowa 1052, 141 N.W.2d 562, Rules of Civil Procedure, 344(f)(15). This cannot be decided on evidence which is sufficient for a divorce decree but woefully lacking on the issue of how this child will be cared for and reared.

Our Iowa case law has pointed to the areas of concern in deciding what solution will best serve the best interest of the child. Upon retrial of this issue such areas must be reasonably fully developed so that the trial court in the first instance, and this court, if review is necessary, may make its judgment based on adequate facts as they exist at time of the additional hearing.

Plaintiff has filed application for allowance of attorney fees and costs. Attorney fees in the sum of $500 and printing costs actually incurred by plaintiff are hereby allowed in favor of plaintiff and against defendant and taxed as part of the costs of this action. Defendant is further ordered to pay child support to plaintiff in the sum of $20 per week from date of this judgment until further order of the trial court after evidence taken, or of this court on special application. Custody of Bradley Alan Daugherty shall remain in plaintiff on the same terms. —Affirmed as to divorce, reversed and remanded for further evidence as to custody and child support.

All JUSTICES concur.