**In the Matter of Ralph Edward Locke and Margaret Locke.**

**Upon the Petition of Ralph Edward LOCKE, Appellee, and concerning Margaret LOCKE, Appellant.**

**No. 57480.**

Supreme Court of Iowa.

Oct. 20, 1976.

Karr, Karr & Karr, Webster City, for appellant.

H. A. Stoebe, Humboldt, for appellee.

Submitted to MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

Margaret Locke, respondent in a dissolution proceeding, appeals from the provisions of the trial court's decree apportioning the assets and liabilities of the parties and from the court's failure to award her alimony.

Ralph and Margaret Locke were married May 28, 1950. Margaret had received a teaching certificate following two years of course work at the University of Dubuque and taught for several years before the parties were married and three years thereafter. Ralph has a bachelor of science degree and a watchmaker's certificate. Two children were born of this marriage. Bill who was born in 1953 is no longer dependent upon the parties for maintenance and support. Mary was born in July of 1955.

In 1954 the parties entered the jewelry business. They borrowed the down payment necessary for this venture from Ralph's father, a bank and Ralph's life insurance. Later the parties purchased the building housing the jewelry store and a home using joint earnings for the down payments on both. The profits from the jewelry business were deposited in a joint checking account until January 1, 1973. Margaret worked full time in the store throughout this period but received no salary and no social security payments were made for her. Ralph, on the other hand, had made social security payments for himself since the opening of the store.

Ralph instituted this dissolution proceeding by filing his petition on March 19, 1973. Trial was held on June 12, 1974, and the decree dissolving the marriage was filed June 24.

At the time of trial Margaret was 54 years of age and was employed as an advertising assistant with a printing company in Humboldt with a gross salary of $120.00 per week. Her teaching certificate was no longer valid and it would require 2–3 years of college courses to reinstate it. Ralph was operating the jewelry business.

The parties had acquired numerous assets during their marriage. The previously mentioned home, owned in joint tenancy, was valued by the parties at $30,000, subject to an outstanding mortgage of $8,300, resulting in an equity of $21,700. The jewelry store building, also owned jointly, was valued at $26,000 subject to a contract balance of $16,835, resulting in equity of $9,165. Real estate in El Paso, Texas, valued at $1,000 with an equity of $264.39 was also jointly owned as was a lot in Livermore, Iowa, worth $50 with no outstanding indebtedness. There is confusion in the appendix and the briefs concerning the equity of the parties in the jewelry inventory, valued at $31,242.75. However, the dispute is of slight importance. The value of the store fixtures was established as $3,000 and the home furnishings and a coin collection were jointly valued at $12,500. A 1968 Chevrolet automobile in Margaret's name was valued at $675 and a ring owned by Ralph was valued at $500.

In addition to the enumerated tangible assets the parties had a number of intangible assets. Ralph had a savings account with a balance of $39.92 and Margaret had a savings account with a balance of $727. Margaret owned jointly with Mary a $1000 certificate of deposit. Margaret had a checking account showing a balance of $35. The combined balance of the parties' joint checking account and a second savings account in Ralph's name totalled $60. An Investors Mutual certificate with a value of $3,890 and 460.08 shares of Investors Variable valued at $3,041.28 were also jointly owned. Margaret owned 310 shares of Investors Variable with a current value of $2,046 which she had purchased with the proceeds of a life insurance policy procured by her before the marriage. Ralph owned a Veteran's Administration life insurance policy with a cash value of $5,447. Ralph owned a second life insurance policy with a cash value of $1,528. Margaret had no life insurance and no health insurance.

At the time of trial Margaret was living in the parties' home and Ralph was paying all household expenses except heat and mis-

cellaneous maintenance expenses. Ralph was operating the jewelry store which had produced a reasonably good income in the past. In addition to her salary from the printing company Margaret received room and board payments from the parties' adult son who was living at home. Mary planned to attend college in the fall of 1974 and Ralph stated he intended to assist her financially, if possible. Ralph testified at trial he planned to remarry within 6–12 months following the dissolution decree.

Margaret's mother died two months before Ralph filed the petition commencing this action. Margaret's share of the estate's 1973 income was $1,146. In addition she received an $8,000 cash distribution for the estate in December 1973. As a consequence of her mother's death 38 acres of farmland near Rock Rapids, Iowa, inherited by Margaret from her father subject to a life estate in her mother, now became vested in Margaret in fee simple.

The trial court dissolved the marriage and awarded Ralph the following assets: his personal belongings, the coin collection, Texas realty, Livermore realty, jewelry inventory, business building and fixtures therein, both life insurance policies, 460.08 shares of Investors Variable, and his bank accounts. The following assets were awarded to Margaret: her personal belongings, the home, household furniture and furnishings, certificate of deposit owned jointly with Mary, the automobile, the Investors Mutual certificate, her bank accounts and the cash distributive share and land inherited from her mother.

The parties' calculations as to the value of the property awarded to each vary greatly. Margaret insists Ralph received assets valued at $61,657 while she was awarded property with an aggregate value of only $29,527. By Ralph's calculations he was awarded $53,409 and Margaret received $69,323. These discrepancies are due to the following: (1) Ralph assigns a value of $25,000 to the 38 acres inherited by Margaret, while Margaret contends that asset should not be considered. *There is no evidence whatsoever of the value of this property at*

*any place in the record.* (2) Ralph's calculations ignore the value of the store fixtures awarded to him and valued at $3,000. (3) Margaret contends the coin collection awarded to Ralph has a value of $11,000 and the furnishings awarded to her are only worth $1,500. Ralph contends both should be valued at $6,250. (4) Margaret includes in Ralph's assets a $500 ring, while Ralph ignores it. (5) Margaret excludes from her calculations her Investors Variable stock valued at $2,046. (6) Margaret does not consider the $8,000 cash distribution to her from her mother's estate.

As stated, no evidence was adduced at trial as to the valuation of the 38 acres of farmland. In addition, it is impossible to determine the separate values of the coin collection and the household furnishings. Excluding these assets, the trial court awarded Ralph property with a total value of $52,722 and awarded Margaret property valued at $38,071.

Respondent presents ten questions and a request for attorney fees to this court in this appeal. However, the following more general issue statements will suffice.

1. Should petitioner be ordered to provide financial assistance for the college education of the parties' daughter?

2. Is the division of property ordered by the trial court justified?

3. Should respondent be awarded alimony?

4. Should petitioner be ordered to pay a portion of the attorney fees incurred by respondent in bringing this appeal?

In equity matters, such as this, where our review is de novo, rule 334, Rules of Civil Procedure, it is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. *In Re Marriage of Jennerjohn*, 203 N.W.2d 237, 240 (Iowa 1972).

"A just determination of the issues presented here turns on the facts in the appendix. No two cases are factually alike. Precedents are of little value. * * * [citing authorities]." *In Re Marriage of Beeh*, 214 N.W.2d 170, 173 (Iowa 1974).

I. Respondent contends the fact the parties' daughter, Mary, desires a college education should be considered "in awarding specific property and responsibilities to each party, and in determining the need for alimony."

Mary was a minor when the petition herein was filed but attained her majority very shortly thereafter. Respondent argues Mary's welfare was within the trial court's jurisdiction when this proceeding was commenced and the mere passage of time before trial should not relieve the trial court of this obligation.

It is not clear whether respondent is arguing support payments for Mary should be ordered pursuant to section 598.17, The Code, 1973, or whether Mary's educational expenses should be considered in determining an appropriate property division and the need for alimony.

Section 598.17, The Code, provides in part:

"* * * *

"The court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse."

Section 598.1, The Code, provides in part:

"As used in this chapter:

"1. * * *

"2. 'Support' or 'support payments' means any amount which the court may require either of the parties to pay under a temporary order or a final judgment or decree, and may include alimony, child support, maintenance, and any other term used to describe such obligations. *Such obligations may include support for a child who is between the ages of eighteen and twenty-two years who is* regularly attending an approved school in pursuance of a course of study leading to a high school diploma or its equivalent, or regularly attending a course of vocational technical training either as a part of a regular school program or under special arrangements adapted to the individual person's needs; *or is, in good faith, a full-time student in a college, university, or area school; or has been accepted for admission to a college, university, or area school and the next regular term has not yet begun*; or a child of any age who is dependent on the parties to the dissolution proceedings because of physical or mental disability." (Emphasis supplied).

It is clear support payments must cease when a child reaches the age of eighteen unless the evidence establishes that one of the statutory exceptions applies. *In Re Marriage of Briggs*, 225 N.W.2d 911, 914 (Iowa 1975).

The evidence as set forth in the appendix submitted in this case would not establish that one of the statutory exceptions is applicable. The only testimony reproduced therein pertinent to this issue is petitioner's statement he was aware of Mary's *plans* to enroll at the University of Iowa that fall. However, a search of the transcript revealed respondent's testimony that Mary had been *accepted* at that school. Thus Mary's situation clearly falls within an exception to the general statutory rule.

To establish that support payments *may* be ordered for Mary's benefit is not to say support payments *must* be made. Section 598.17, The Code, requires only that reasonable support be provided and reasonable support *may* include payments toward Mary's college education under the facts and circumstances present here. Section 598.1(2).

In *In Re Marriage of Zoellner*, 219 N.W.2d 517, 525 (Iowa 1974), this court made the following statements concerning the determination of an appropriate child support allowance:

"It has frequently been said by this court that in making a child support allowance each case is peculiarly dependent on its

facts. Factors to be considered are parties' age, health, present earning capacity, future prospects, amount of resources owned by each or both parties, contributions of each to the joint accumulations, the children involved, duration of the marriage, indebtedness of each or both, and any other relevant factors which might assist the trial court in reaching a just and equitable decision. * * * [citing authorities]. Stated somewhat differently, a child support allowance cannot be made or evaluated in a vacuum; the entire record must be examined. * * * [citing authority]."

Earlier in the opinion in *Zoellner*, 219 N.W.2d at 524–525, this court quoted this statement from *In Re Marriage of Carney*, 206 N.W.2d 107, 112 (Iowa 1973):

"At common law a father is primarily liable for the support of his children. However, in this state by reason of section 597.-14, The Code, which provides the reasonable and necessary expenses of the family are chargeable upon the property of both husband and wife, the view prevails that the same legal obligation rests upon both husband and wife, not necessarily equally but proportionately according to their ability and circumstances * * * [citing authorities]."

Section 597.14, The Code, provides:

"Family expenses. The reasonable and necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

The liability resting upon both husband and wife for expenses of the education of their children under the foregoing statute would ordinarily terminate as the children reach majority, now 18 years. However, the provision contained in section 598.1(2) permits the court in a dissolution proceedings to enforce this obligation to support a child between the ages of 18 and 22 years who is regularly attending an approved school or has been accepted for admission to a college, university or area school and the next regular term has not yet begun.

Thus, respondent could be subjected to an obligation to contribute to the expenses of Mary's education until she reaches the age of 22 years.

█ Our de novo review compels the conclusion that under the facts and circumstances shown in this record Mary should be provided with the necessary support to afford her a college education until she reaches the age of 22 years. In support of this conclusion see *Gerk v. Gerk*, 259 Iowa 293, 299–301, 144 N.W.2d 104, 109, particularly division V of that opinion, and the authorities cited therein.

The foregoing conclusion and the obligation of respondent to contribute to the costs and expenses of affording Mary such education lead us to a consideration of respondent's contentions (1) the award of assets of the parties made to her in the court's decree was neither just nor equitable and (2) that this inequitable distribution of assets was not balanced by reason of the court's failure to award her alimony. We believe a determination of these contentions is necessary in view of the well-established principle in this jurisdiction that one of the important factors to be considered in awarding child support is the resources of the parents. In support see *Beneventi v. Beneventi*, 185 N.W.2d 219, 225 (Iowa 1971).

█ II. A distribution of the assets of the parties in a dissolution proceedings should be based on the guidelines set out in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), excluding consideration of reward or punishment on the basis of fault. *In re Marriage of Winter*, 223 N.W.2d 165, 169 (Iowa 1974). See *In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975).

█ Division of assets of parties in dissolution of marriage proceedings based on either a one-third share to wife or an equal division is not statutorily sanctioned; that which is determinative is that which would constitute an equitable and just award under the circumstances. See *In re Marriage of Cooper*, 225 N.W.2d at 919.

Respondent contends the property division ordered in the decree below is tainted by numerous errors on the part of the trial court. Respondent insists the trial court erroneously considered irrelevant factors, failed to consider relevant factors and erred in the valuation of certain assets thereby arriving at an inequitable division of the parties' property.

As previously noted, the parties disagree on the total valuation of the assets awarded to them by the trial court. The focal point of the disagreement is the treatment of the 38 acres of farmland and cash distribution inherited by Margaret. Respondent contends that property should not be considered in the property division determination. Petitioner argues Margaret's inheritance is indeed a relevant factor which must be considered in establishing a property division.

Respondent does not contend one spouse cannot be granted an interest in property inherited by the other. In *In re Marriage of Beeh*, supra, 214 N.W.2d at 175, the court said:

"In a number of prior decisions this court has granted a spouse an interest in property the other spouse has inherited. See, e. g., *Neiderhiser v. Neiderhiser*, 254 Iowa 791, 119 N.W.2d 245 (1963); *Rider v. Rider*, 251 Iowa 1388, 105 N.W.2d 508 (1960); *Parizek v. Parizek*, 210 Iowa 1099, 229 N.W. 689 (1930); *Chamberlain v. Chamberlain*, 185 N.W. 983 (Iowa 1922); *Brett v. Brett*, 191 Iowa 262, 182 N.W. 241 (1921)."

Respondent instead argues that since she did not inherit the farmland until *after* the marriage had broken down consideration of that asset would be completely contrary to the policy inherent in the third postmarital criterion of *Schantz*, supra, which is as follows:

"Net worth of property acquired, contributions of each party thereto by labor or otherwise, *net worth and present income of each party*." (Emphasis supplied).

Respondent ignores the emphasized portion of that criterion. Clearly the net worth of the parties is a relevant factor.

However, it must be conceded respondent's contention concerning *when* the parties' net worth is to be determined presents an interesting question.

■ Respondent asserts that if this court sanctions the consideration of property acquired after the marital breakdown but before trial in determining a division of property "unprecedented abuse could follow." Respondent foresees the net worth of the parties' relatives becoming a relevant factor. Respondent also predicts strategic delays in dissolution proceedings to take advantage of deaths and inheritances. However, respondent's position would require a judicial determination of the exact date of the marital breakdown, an impossible task in most, if not all, dissolution cases. It would appear the date of trial is the only reasonable time at which an assessment of the parties' net worth should be undertaken. In *Schantz*, supra, 163 N.W.2d at 405, this court said:

"Under existing circumstances, to the extent reasonably determinable by the record, we are persuaded defendant's net worth, *at the time of trial*, was at least $112,000, and probably much more." (Emphasis supplied).

It should be noted here respondent in fact inherited the farmland in question not from her mother but from her father who died many years before this action was commenced. That inheritance was subject to a life estate in her mother. Therefore, it would not be correct to state she inherited this farmland after the marital breakdown.

The problem at this point is not whether property inherited by respondent from her parents should be restored to her by the trial court's decree terminating the marital relationship but whether property inherited by the wife and restored to her by the court's decree is a proper factor to be considered in arriving at an equitable determination of financial or property rights and obligations of the parties as directed in *Schantz*, 163 N.W.2d at 405.

■ It is our view the value of property inherited by one of the spouses and award-

ed to him upon dissolution of the marriage is a proper factor to be considered by the court in arriving at the net worth of each party, relative needs of the other and the value of the resources of the parties.

Consequently, it becomes necessary to ascertain the value of that property. However, at this point an insurmountable problem is confronted. *At no place in the appendix, transcript or exhibits is there evidence of the value of this land.* Neither party had filed a financial statement in this matter. Section 598.13.

■ The value of respondent's farmland must be established in order for this court or any court to determine a justified division of the parties' property. It was improper for the trial court to, as it appears it must have, draw upon its own knowledge and speculate as to the value of the land based upon the meager description given by the parties. A "justified" property division cannot be based upon the trial court's guess as to the value of such a substantial asset.

This court was faced with a similar situation in *Lessenger v. Lessenger*, 258 Iowa 170, 175, 138 N.W.2d 58, 61, where the following statements were made:

"We have carefully read and searched the record. * * * The evidence is inadequate as to the essentials to be considered in determining what is 'right' (section 598.-14). We are convinced the questions of child support and property division or lump sum alimony cannot be properly adjudicated under the record before us. As argued by plaintiff's present counsel, who did not represent her at the trial, equity can only be done by remanding this controversy to the trial court for reopening and further evidence on these two vital issues.

"The general rule is where an equity case is not in a condition for a final decree, none will be made by this court, but the case will be remanded. * * * [citing authorities]." See also *In re Marriage of Morgan*, 218 N.W.2d 552, 561 (Iowa 1974); *In re Estate of Miguet*, 185 N.W.2d 508, 519 (Iowa 1971); *Punelli v. Punelli*, 260 Iowa 549, 555, 149 N.W.2d 784, 788.

In *Daugherty v. Daugherty*, 260 Iowa 878, 882, 151 N.W.2d 569, 572, it was said:

"* * * Where the evidence is insufficient for the fair de novo determination of an important issue, we can and should return the case for more evidence on the subject. * * * [citing *Lessenger* and *Punelli*, both supra]."

A contrary result was reached in *In re Marriage of Stom*, 226 N.W.2d 797, 799–800 (Iowa 1975), where it is said:

"James contends the property settlement was inequitable. Janice asks that the district court decree be affirmed in this respect. We find the record is wholly inadequate to properly review trial court's property division. See * * * [*Schantz*, supra]. There is no itemization of personal property held by each party, or the reasonable value of this property. Neither is there any competent evidence of the present market value of the home awarded James, although there is testimony relating to the indebtedness owed on it.

"We affirm the property division made by trial court."

Nevertheless, this case must be remanded with directions to the trial court to permit a reopening of this matter for the presentation of the evidence concerning the value of respondent's inherited farmland.

"The necessity of remanding this case for further proceedings and taking of additional evidence is regrettable. We have no doubt, however, as to the propriety thereof in the interests of justice under existing circumstances." *In re Estate of Miguet*, supra, 185 N.W.2d at 519.

Since a remand of this proceeding is necessary because of the inadequacy of the record pointed out above, it behooves this court to consider respondent's other contentions to determine if additional directions should be provided the trial court.

■ Respondent directs this court's attention to a second property valuation problem presented by the record herein. Evidence was introduced tending to establish the value of the parties' household furnish-

ings and a coin collection as $12,500. The trial court awarded the former to respondent and the latter to petitioner even though no evidence established the separate values of those two items. Quite conceivably, as respondent points out, the household furnishings could be worth as little as $1500 leaving petitioner with an $11,000 coin collection. Here again there is no way to determine the value of certain assets and therefore there is no way for a justified property division to be determined. Upon remand evidence should be adduced on the valuation of these two items.

Respondent contends certain relevant factors were ignored by the trial court and should be considered by this court in its de novo review of the property division portions of the decree. In light of the state of the record presented here it is not possible to determine what factors the trial court considered in arriving at a property division because it is not possible to determine what the property division was. All this court can do is point out what it believes are the relevant factors and direct the trial court to consider those factors on remand if the valuation evidence presented makes it necessary for the trial court to amend its property division.

■ Respondent's position that the presence or absence of social security benefits is a factor to be considered under the *Schantz,* supra, analysis is well taken. Arguably, social security benefits fit within the sixth postmarital criterion of *Schantz* ("earning capacity of each party") but certainly the fall within the tenth postmarital "catch-all" criterion. See *In re Marriage of Harrington,* 199 N.W.2d 351, 355 (Iowa 1972). The trial court is directed to give this factor appropriate consideration upon remand.

It is of little value to attempt to deal with respondent's additional assertions concerning relevant and irrelevant factors under the *Schantz* analysis. Respondent's basic contention is that the trial court's division of property is the result of an erroneous analysis. This court cannot assess the trial court's determination let alone right any wrongs therein without the valuation

evidence referred to above. There seems to be no denying the necessity of remand as to the property division portions of the trial court's decree.

■ III. Respondent alleges the facts and circumstances demonstrated in the record herein compel an award of alimony for her benefit. However, the same problem deemed insurmountable in division II is also present here. If a justified property division cannot be determined because of evidentiary inadequacies, it is likewise impossible to determine if or how much alimony should be awarded. The alimony and property division portions of a dissolution decree should be interrelated in an overall attempt to fairly treat the parties involved. This court, on many occasions, has said:

"Although allocations of support money, alimony and property have a different purpose, they are closely related in determination of the amounts to be awarded. *In re Marriage of Winter,* Iowa, 223 N.W.2d 165, 169. Each issue necessarily must be decided after an examination of the entire record." *In re Marriage of Peterson,* 227 N.W.2d 139, 142 (Iowa 1975). See also *In re Marriage of Zoellner,* supra, 219 N.W.2d at 524.

Because of the inadequacies of the record presented here it is impossible to determine if alimony is justified. An alimony determination cannot be made if a property division cannot be fixed. Both determinations go hand-in-hand and each depends upon a resolution of the other.

The trial court should be directed upon remand to reconsider the question of alimony in light of the evidence introduced therein on the values of the farmland, coin collection and household furnishings.

IV. Respondent requests an order directing petitioner to assist respondent in the payment of attorney fees incurred by her in bringing this appeal.

"Ordinarily, a litigant is not required to pay his opponent's attorney fees, but under section 598.11, The Code, the court may order a litigant to pay the adverse party a sum 'to enable such party to prosecute or

defend the action.' * * * [citing authorities]. Attorney fees are not recoverable as a matter of right. *Any such allowance made depends upon the wife's financial needs and the ability of the husband to satisfy them.* * * * [citing authority]. The payment of attorney fees is *necessarily limited by the other party's ability to pay.* * * * [citing authority]." *In re Marriage of Zoellner,* supra, 219 N.W.2d at 523. (Emphasis supplied).

■ Once again the insufficiency of the record herein prevents the resolution of an issue presented in this appeal. Without the valuation evidence referred to above it is impossible to determine the wife's financial needs and the husband's ability to satisfy them.

Upon remand the trial court shall fix the amount of the attorney fees to be paid by petitioner for services rendered respondent on this appeal without fixing the total amount or value of such attorney's performance. The amount so awarded shall be made a judgment against petitioner.

In the absence of testimony which bears upon factors relevant to a determination of a just and equitable property division the trial court could fail to reach a just and right decision. Without such testimony this court cannot adequately review that decision. See *Beneventi v. Beneventi,* 185 N.W.2d at 225.

The case is therefore—Remanded with directions to the trial court to proceed within 30 days from the filing of this opinion with a hearing for the purposes herein directed.