**IN THE COURT OF APPEALS OF IOWA**

No. 13-2066
Filed November 13, 2014


**IN RE THE MARRIAGE OF LORI LYNN HATCH
AND TIMOTHY LOREN HATCH**

**Upon the Petition of
LORI LYNN HATCH, n/k/a LORI LYNN SCHWEER,**
  Petitioner-Appellee/Cross-Appellant,

**And Concerning
TIMOTHY LOREN HATCH,**
  Respondent-Appellant/Cross-Appellee.
_____


  Appeal from the Iowa District Court for Bremer County, Paul W. Riffle,

Judge.


  Tim Hatch appeals and Lori Hatch (now Lori Schweer) cross-appeals from

the district court's decree of dissolution of their marriage. **AFFIRMED AS**

**MODIFIED.**


  Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,

P.L.C., Cedar Falls, for appellant.

  G.A. Cady III, Hampton, for appellee.


  Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**POTTERFIELD, P.J.**

Tim Hatch appeals and Lori Hatch (now Lori Schweer) cross-appeals from the district court's decree of dissolution of their marriage, claiming the economic divisions in the decree failed to do equity between the parties.

### I. Factual and Procedural Background

Tim and Lori married in 2001. They have no children together. While together, they lived in a house Lori purchased prior to the marriage. Tim started a trucking business during the marriage. The parties separated in February 2012. At that time, Tim was in a relationship with another woman with whom he has fathered a child. Lori was terminated from her employment and began attending classes at the University of Northern Iowa full time. She has taken on student loan debt in order to enable her to do so.

Lori petitioned the district court for dissolution of the marriage on February 12, 2013. The trial court issued its decree dissolving the marriage on November 25, 2013. Both parties made post-trial motions requesting the district court to enlarge, amend, or modify its ruling on the economic issues. Tim filed his notice of appeal and Lori filed her notice of cross-appeal while the post-trial motions were pending. The district court ruled on the parties' post-trial motions on January 30, 2014. Our supreme court granted permission to move forward as an interlocutory appeal in a July 24, 2014 order and transferred the case to our court.

### II. Standard of Review

A dissolution action is a case of equity, and we therefore review de novo. Iowa R. App. P. 6.907. "We give weight to the findings of the district court,

particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

### III. Applicable Law

Iowa is an equitable distribution jurisdiction, meaning courts "equitably divide all of the property owned by the parties at the time of divorce." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007); *see* Iowa Code § 598.21 (2013). "Although an equal division is not required, it is generally recognized that equality is often most equitable." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005). Courts determine what is equitable "in light of the particular circumstances of the parties." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005). "Before dividing the marital property, a court must identify all of the assets held in the name of either or both parties as well as the debts owed by either or both of them." *Keener*, 728 N.W.2d at 193. "The purpose of determining the value is to assist the court in making equitable property awards and allowances." *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979).

### III. Discussion of Issues Raised on Appeal

*A. Marital Equity in Real Estate.* The trial court's valuation of the parties' real estate as a marital asset was limited to the value of improvements made on the house during the course of the marriage because Lori purchased the house prior to the marriage. Those improvements were valued at $30,000, and neither party contests that figure.

However, Tim asserts Lori did not own the house unencumbered. He claims the house was subject to a mortgage held by Lori's grandmother. To

support his claim, Tim relies on a document Lori created with a header reading "LS Mortgage" and a series of checks with notes that read "house" or "house loan." Based on these documents, he claims they together paid $33,124.83 towards the mortgage on the house during the course of the marriage. When added to the value of the improvements on the house, Tim asserts a marital value of $63,124.83 in the home.

Lori testified the "LS Mortgage" document she prepared was a record of money owed on loans for trailers for Tim's trucking business. She explained she possessed only a layman's understanding of finance terminology and her use of the term "mortgage" on the document was not meant to denote an interest in real estate. She testified and the district court found she wrote the checks to pay a loan to her parents borrowed to purchase a trailer used for Tim's business. Lori notes there is no documentation the house was purchased subject to a mortgage and no mortgage on the house was recorded.

This issue is a matter of credibility. Tim asserts the house was subject to a mortgage while Lori asserts it was not. There is no definitive evidence in the record that answers the question. Though the district court's findings are not binding on this court, we nevertheless give its findings particular weight when it comes to the credibility of witnesses. *See McDermott*, 827 N.W.2d at 676. The district court found "the real estate was unencumbered at the time of the parties' marriage" and stated, "Lori was keeping the books for the business and the Court gives greater weight to her testimony." We find nothing in the record that contradicts the district court's credibility determination. We affirm the district court's valuation of the marital portion of the house as $30,000 in improvements.

*B. Marital Equity in Tim's Truck.* Tim purchased a truck that was encumbered by a $19,035 loan at the time of purchase. The court awarded the truck to Tim. The value of the truck ($47,000) less the encumbrance left Tim with $27,965 in equity. At the time of dissolution proceedings, the encumbrance had ballooned to $35,990.38. Tim believes the truck is therefore worth less than the value ascribed to it by the trial court.

Lori notes Tim has not explained why he presently owes more on the truck than he did at the time of purchase. Tim responds that he does not need to provide an explanation because Lori did not contest the amount owed. He asserts that the law requires a categorical reliance on the "value established at the time of trial" rather than "the value asserted at the time of separation." *See Locke v. Locke*, 246 N.W.2d 246, 252 (Iowa 1976) ("[T]he date of trial is the only reasonable time at which an assessment of the parties' net worth should be undertaken.").

However, the district court did not rely on the encumbrance on the truck at the time of separation. Instead it calculated the value of the truck by considering the additional debt incurred as dissipation of assets, which is "a proper consideration when dividing property." *See In re Marriage of Fennelly*, 737 N.W.2d 97, 104 (Iowa 2007). "In determining whether dissipation has occurred, courts must decide (1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances." *Id.*

We agree with the district court that the unexplained increase in debt is a dissipation of assets because Tim has asserted no "alleged purpose" for the

additional encumbrance on the vehicle. We affirm the district court's valuation of the truck.

*C. Student Loan Debt as Marital Debt.* Lori accumulated $42,584 in student loan debt and $8968 in debt to her parents to support her during her schooling. The district court assigned all of that debt as marital debt, significantly affecting the court's calculation of the parties' net assets. Tim asserts and Lori does not deny the debts were undertaken unilaterally by Lori after the two had separated. Tim therefore claims all the debt should be considered Lori's personal debt rather than marital debt. Lori responds the debt should be considered marital because Tim would nevertheless have been responsible for paying Lori for temporary support—accounting for "half" of the debt according to Lori. The other half of the debt, Lori asserts, was beneficial to Tim because it will allow Lori to provide for herself in the future because her education will increase her employability.

Lori generally referred to Tim's obligation to provide her with support during the pendency of the dissolution proceedings in her resistance to Tim's post-trial motion, but the district court did not rule on this argument. "[I]ssues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Even if Lori's claim were within the scope of this appeal, she may not prospectively and unilaterally off-set theoretical future temporary support from Tim by borrowing money for her continuing education.

Tim cites several of this court's cases as examples of circumstances in which student loan debts or other personal debts should be excluded from the

marital estate, particularly during a period of separation. *See In re Marriage of Johnson*, 499 N.W.2d 326, 328 (Iowa Ct. App. 1993) (excluding personal debts); *In re Marriage of Smith*, 351 N.W.2d 541, 543 (Iowa Ct. App. 1984) (holding family debts incurred after separation are individual debts);[1] *see also In re Marriage of Fiedler*, No. 10-0271, 2011 WL 227647, at *5 (Iowa Ct. App. 2011) (holding student loans obtained prior to marriage are outside the marital estate); *In re Marriage of Nutting*, No. 99-1381, 2000 WL 766254, at *4 (Iowa Ct. App. 2000) (upholding district court order requiring spouse to assume her own student loans in their entirety); *cf. In re Marriage of Deol*, No. 09-0909, 2010 WL 2925147, at *2–3 (Iowa Ct. App. 2010) (holding student loan debt is a shared marital liability when accrued during the marriage relationship, used for family expenses, and incurred with the approval of the non-borrowing spouse).

There is no evidence before us that Lori's education serves to benefit Tim. Lori anticipates her yearly wages will not increase over her last full-time position as a result of her education, so it will not lower Tim's support obligations. We disagree that the district court's award of half of Lori's student debt to Tim is fair and equitable. We therefore modify the order by subtracting the debt— $51,522—from the district court's calculation of Lori's net marital assets and liabilities and modify the equalization payment calculations accordingly.

### IV. Discussion of Issues Raised on Cross-Appeal

*A. Snowmobile Debt as Marital Debt.* On cross-appeal, Lori claims the district court should not have assigned $5350 of debt owed against Tim's

---

[1] Lori argues the cases to which Tim cites are not "authority for the proposition[s] cited." We agree the cases do not establish a firm rule of law that applies in this case, but we find their facts sufficiently analogous to guide us toward an equitable outcome.

snowmobile as marital debt. She argues Tim had enough money at the time of the purchase to have been able to purchase the snowmobile without borrowing. Tim testified he had documentation that shows his parents paid the purchase price to a lender and he now owes the debt to his parents. The district court found his testimony credible, and we give weight to such a determination where, as here, nothing in the record undermines it. *See McDermott*, 827 N.W.2d at 676. We affirm the district court's valuation of the snowmobile debt as a marital debt.

*B. Dissipation of Assets.* Lori's second claim on cross-appeal is that Tim dissipated assets in excess of those found by the district court. *See generally Fennelly*, 737 N.W.2d at 104. The district court found that Tim dissipated assets in various ways, "including the 2012 Ford F250 and the 2000 Peterbilt truck and the inclusion of the four-wheeler and the $9,000 cash withdrawal."

Lori now claims Tim dissipated an additional amount in excess of $20,000 between the parties' separation and dissolution. Tim describes the expenditures as costs of living and doing business during that time. Lori asserts this explanation is not credible. The district court nevertheless found Tim's explanation satisfactory, and after giving the district court's credibility determinations proper weight, we agree. The district court found Tim dissipated assets in multiple ways, and the court's inclusion of those assets in its calculation was equitable despite Lori's belief the amount should have been higher. We affirm the district court's calculation of dissipated assets.

*C. Attorney Fees.* Lori lastly asserts the trial court should have and this court should require Tim to pay her attorney fees. An award of attorney fees

rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *In re Marriage of Romanelli*, 570 N.W.2d 761, 765 (Iowa 1997).

Lori claims Tim has paid all of his own attorney fees from the marital estate while Lori has been forced to pay her attorney fees from her student loan proceeds. However, the record does not demonstrate with any clarity that Tim's attorney fees were paid from the marital estate. On the record before us, we find the district court was within its discretion to assign each party its own attorney fees, and we therefore affirm. In exercising our discretion to assign appellate fees and costs, we order each party to bear its own costs of appeal and appellate attorney fees in light of the relative success of each party on the merits of their issues on appeal.

**V. Conclusion**

The district court rulings on the marital value of the real estate, truck loan, snowmobile loan, dissipation of assets were equitable, and we affirm them. The assignment of attorney fees and costs was within its discretion. However, we modify the order in one respect. Lori's student loans should not have been considered marital debt, and the district court's equalization payment was miscalculated as a result. After removing those debts from the district court's calculations, the equalization payment owed to Lori is $86,876.50. We do not disturb the district court's payment plan contained in the decree.

**AFFIRMED AS MODIFIED.**