**IN THE COURT OF APPEALS OF IOWA**

No. 13-2047
Filed November 26, 2014

IN RE THE MARRIAGE OF KATHLEEN KAY KOETHER
AND GREGORY SCOTT KOETHER

Upon the Petition of
**KATHLEEN KAY KOETHER,**
        Petitioner-Appellant,

**And Concerning**
**GREGORY SCOTT KOETHER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Clayton County, Bradley J. Harris,

Judge.


        Kathleen Koether appeals from the district court's order dissolving her

marriage to Gregory Koether and its division of the parties' assets.  **AFFIRMED**

**AS MODIFIED.**


        Charles R. Kelly Jr. of Charles Kelly Law Office, P.C., Postville, and Terry

D. Parsons of Olsen & Parsons, Cedar Falls, for appellant.

        Sarah E. Stork Meyer of Clemens, Walters, Conlon & Meyer, L.L.P.,

Dubuque, for appellee.


        Heard by Danilson, C.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, J.**

Kathleen Koether (Kathy) appeals from the district court's order dissolving her marriage to Gregory Koether (Greg) and its division of the parties' assets.

### I. Factual and Procedural Background

Kathy and Greg were married on June 26, 1976. In the course of their thirty-seven year marriage they worked as farmers and eventually started a limited liability company (LLC) under which they could run their farming business. Kathy also began to work in education and became a principal at an elementary school. She earns a set salary and has benefits and retirement packages through her employer. Greg primarily ran the LLC, but the business was built through a team effort between the two parties. Kathy's salary allowed Greg to weather the inconsistent periods of profitability and unprofitability to which the LLC was prone. The LLC acquired numerous assets, especially real estate, through various purchases, inheritances, and other transactions.

Kathy is still a school principal, and Greg continues to run the farming business. They have two sons and a daughter, all three of whom are adults.

On March 3, 2010, Kathy petitioned the district court to dissolve the marriage. On her request, the district court issued an order pendente lite, forbidding both parties from dissipating or diminishing the marital assets held in the LLC. The order allowed for assets to be used in the ordinary course of business but required any such usage to be disclosed to both parties. Any new assets and income acquired by the LLC were required to be placed in a specific bank account.

Trial was continued many times and did not occur until October 2013. In the three and half years between the petition and the trial, the parties hotly contested each other's compliance with the order pendente lite. Kathy formally filed applications for orders to show cause or initiate contempt four times. Greg filed one such application against Kathy. During that time, the parties also litigated an application to modify the order pendente lite.

The district court issued its dissolution decree on October 22, 2013. Kathy filed a motion asking the district court to enlarge and expand its order. The court issued a ruling modifying its order on November 21, 2013. Kathy filed her notice of appeal on December 23, 2013.

Additional facts will be discussed along with the issues upon which they bear.

**II. Scope and Standard of Review**

Dissolution actions are equity cases, and we review them de novo. Iowa R. App. P. 6.907. "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). "We will disturb the district court ruling when there has been a failure to do equity." *In re Marriage of Kimbro*, 826 N.W.2d 696, 698 (Iowa 2013) (citations omitted).

**III. Discussion**

A. Inherited Properties

*1. Timber Land.* On her death, Greg's mother left timber farming property to Greg and his sister to share equally. The district court awarded Greg his

interest in the timber property rather than divide it between the parties as a marital asset.

"Property inherited by either party . . . during the course of the marriage is the property of that party and is not subject to a property division . . . except upon a finding that refusal to divide the property is inequitable to the other party . . . ." Iowa Code § 598.21(6) (2013). There are five factors we consider to determine whether exempting inherited property from division is inequitable: (1) contributions of the parties toward the property, its care, preservation, or improvement; (2) independent close relationships between the testator and the inheritor's spouse; (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them; (4) any special needs of either party; and (5) any other matter that would render exemption plainly unfair to the spouse. *McDermott*, 827 N.W.2d at 679. The length of the marriage may also be an important factor to consider. *In re Marriage of Goodwin*, 606 N.W.2d 315, 319 (Iowa 2000).

Kathy argues exemption of the timber property from division is inequitable because she contributed to the improvement of the property by planting trees, she maintained an independent close relationship with Greg's mother, and a marriage of thirty-seven years is of substantial length. She argues the property was treated by both parties as an asset of the LLC even though the LLC holds no legal interest to the property.[1] As a de facto property of the LLC, she argues, equity is only achieved by dividing the property along with the marital estate.

---

[1] One of her factual bases for claiming the property is de facto LLC property is the inclusion of the property in the trial appraisal, which listed the LLC as the owner and

Greg counters that there is no evidence Kathy improved the specific property in question. He concedes Kathy maintained a close relationship with his mother but asserts each other factor weighs against distribution of the timber property as a marital asset.

The district court distinguished the timber property from that which "has been comingled with other real estate owned by the parties." After reviewing the record, we agree with the district court that the timber property was kept separate from the parties' other real estate interests. We disagree with Kathy's claim that "every indication is that [the property] was in fact treated as part of [the LLC] operation without any differentiation from the other holdings of the parties."

The property was inherited by Greg and his sister, and title was never transferred to or held by the LLC in contrast to other properties inherited by the parties. Kathy's purported improvements on the land are not reflected in the record with any specificity. We find no special need for Kathy to attain an interest in the property, and there are no individual contributions from Kathy preserving the property for herself. Though the length of the marriage and relationship with Greg's mother weigh in Kathy's favor, they do not overcome the weight of the remaining factors against her. We affirm the district court's assessment of the timber land as Greg's individual interest.[2]

---

operator of the timber property. We agree with Greg that this erroneous classification in the appraisal bears no legal significance as to the actual ownership of the parcel, but we may take it into account to evaluate whether an inequity has occurred.

[2] In affirming, we also reject Kathy's request to remand for determination of any separate assets obtained by purchase. There is no indication the district court failed to account for the award of the timber lands to Greg as a factor in its determinations. Kathy cites to *Locke v. Locke*, 246 N.W.2d 246, 252–53 (Iowa 1976), for her proposal. However, in *Locke*, the district court could not have considered that factor because there was no evidence in the record of the value of the land. *Id.* This case is distinguishable with its

*2. Frabill Farm.* Kathy inherited farm land from her mother in 2000. In 2007, she entered into a like-kind exchange for a portion of her inherited property that netted her $98,840.80. This sum was used to partially fund the purchase of farm land known between the parties as the Frabill Farm. The purchase price of the Frabill Farm totaled $452,000. The remainder of the purchase price was acquired through a loan. The title of the Frabill Farm is in Kathy's name alone. Greg claims it was the parties' intention to transfer title to the LLC in time. The Frabill Farm is one of the LLC's primary operating locations although it was never an asset of the LLC.

The district court awarded Kathy the entirety of the remainder of the inherited farm land, but found the Frabill Farm to be a divisible marital asset. Kathy asserts that outcome is inequitable and inconsistent with the district court's disposition on other inherited properties.

Kathy argues the use of inherited assets to purchase the Frabill Farm means the district court should have at least off-set the amount of capital the sale of her inheritance provided for the purchase. We agree. The district court's order for the sale of the Frabill Farm is modified to award to Kathy the first $98,840.80 of the net proceeds, followed by the equal division of the balance of the net proceeds, according to the procedure outlined in the court's decree.

*3. All Clayton County Properties.* Kathy asserts on appeal her initial recommendation to the district court—that all properties in Clayton County, including inherited ones, be considered marital assets and divided equally—

---

ample documentation and appraisals, and the court's actions in *Locke* are therefore not controlling in the case before us.

would be more equitable than removing inherited properties from the marital estate. We recognize that this method of property division may have been simpler, but that does not render the district court's method inequitable. Kathy's personal sentiments about the past dreams and goals of the parties expressed in her brief also do not bear upon the equitable nature of the district court's order. We find the district court's methodology was fair to both parties and in keeping with Iowa Code section 598.21(6). We decline to adopt Kathy's recommendation regarding the Clayton County properties and affirm the district court.

B. Spousal Support

The district court ordered Kathy to pay spousal support to Greg in the amount of $1500 per month until one of three things occur:

> 1. The legal title issue to the real estate contained in the LLC is resolved and the LLC is dissolved; 2. The parties reach an agreement amending the operator's agreement of the LLC to allow the payment of a salary by the LLC to [Greg] for his services; or, 3. [Greg] reaches the age of 65 years, dies or remarries.

Kathy claims on appeal this order is inequitable and discourages Greg from working with her to resolve the real estate issues or establish his salary. Greg argues $1500 is not sufficient for living expenses and the order will incentivize him to establish an acceptable wage or dissolve the LLC to obtain his portion of its assets.

Provision of spousal support is proper "especially where the disparity in earning capacity has been great." *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993). The record shows Greg's earning potential as a farmer and rancher is much lower and less stable than Kathy's, whose job provides a yearly salary and benefits. Greg is currently 62 years old, and the spousal support order will

expire in less than three years regardless of any progress made towards dissolving the LLC or establishing a salary for Greg. Given these considerations, we do not find the district court's order for spousal support inequitable, and we affirm.

### C. Dissipation of Assets

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *Kimbro*, 826 N.W.2d at 700. "In determining whether dissipation has occurred, courts must decide (1) whether the alleged purpose of the expenditure is supported by the evidence, and if so, (2) whether that purpose amounts to dissipation under the circumstances." *In re Marriage of Fennelly & Breckenfelder*, 737 N.W.2d 97, 104 (Iowa 2007) (citations omitted).

The first prong of the test asks "the spending spouse [to] show how the funds were spent or the property disposed of by testifying or producing receipts or similar evidence." *Id.* The second prong of the test requires a balancing of several factors, including the proximity of the expenditures to the parties' separation; whether the expenditures were typical of those made during the marriage; whether the expenditure benefited both spouses or only one of them; the necessity of the expenditure; the amount of the expenditure; and any intention to hide, deplete, or divert marital assets. *Id.* at 104–05.

Kathy claims Greg dissipated $75,000 of marital assets during the pendency of the dissolution action. She asks this court to account for that dissipation because the district court denied her request to do so. She asserts the expenditures were for Greg's personal use and in violation of the district

court's order pendente lite. Greg claims the expenditures did not violate the order because they were made in the ordinary course of the LLC's business or for his living expenses.

As to the first prong, Greg's testimony along with that of his paramour, Candy Lamb, constitutes credible evidence that the expenditures were in fact used for the purposes Greg claims. We move to the second prong to determine if business expenditures and personal living expenses constitute dissipation of marital assets on these facts. We agree with the district court[3] that the use of these funds does not constitute dissipation of assets.

Nothing in the record indicates Greg's living expenses unnecessarily exceeded his basic needs or expenses during the parties' separation.[4] The district court's order pendente lite specifically permitted the parties to make expenditures that were "in the ordinary course of their business."[5] The business expenditures benefited both parties by furthering the business goals of the LLC in which both parties retain equal interest. There is no evidence in the record to

---

[3] We agree with Kathy that the district court may not pay Greg a salary out of the LLC's assets. However, the district court order does not assign Greg a salary. (We discuss Kathy's separate assertion that the court erroneously reached the division of LLC assets in section III(D), *infra*.) Despite the district court's phrasing—that "the funds were earned by respondent by his services to the L.L.C."—its ultimate finding that Greg dissipated no assets was proper and equitable. It reflects the fact that Greg's living expenses, which would normally be derived from the parties' income, do not constitute a dissipation of marital assets. *See Kimbro*, 826 N.W.2d at 702 ("[E]xpenditures were for legitimate living expenses and did not constitute dissipation.").

[4] Despite Kathy's insinuation, Greg's provision of money to Candy was not merely for Candy's personal enjoyment, but for her to use to assist Greg in managing his living expenses by paying bills or buying groceries.

[5] We recognize there were additional requirements imposed upon expenditures in the ordinary course of business Greg did not always comply with, including use of a specific bank account and informing Kathy of all expenditures. However, we believe the district court ably enforced its own order pendente lite during the many proceedings between the petition for dissolution and trial. Greg was subjected to the appropriate sanctions.

corroborate Kathy's claim that it was Greg's intent simply to divest the marital estate of the value of the expenditures. We affirm the district court's finding that neither party dissipated assets. Kathy is not entitled to the cash property settlement she requests.

### D. LLC Assets

Kathy claims the district court failed to properly distinguish between the LLC's assets and the parties' personal assets, which include membership shares in the LLC but not the LLC's assets themselves. She notes the LLC entity is an indispensable party to any action dividing its assets. *See* Iowa R. Civ. P. 1.234(2). Because the LLC was not a party to the dissolution action, she argues the district court could not divide its assets. She claims the district court nevertheless did so in two ways: first, it awarded Greg a salary from the LLC's assets; and second, it awarded Greg vehicles that were titled to the LLC. We have found the court's language in its decree was not an award of a salary to Greg.

Kathy relies on the following portion of the court's decree regarding her claim Greg dissipated assets:

> The court notes that [Greg] has removed funds from the LLC account and used them for his own personal benefit. The court further determines that said funds were earned by respondent by his services to the LLC. Any funds taken by [Greg] from the LLC are more than offset by those marital funds acquired by [Kathy] from her educational salary and disposed of by her without providing for the living expenses of [Greg] as was the usual practice of the parties.

Kathy believes the district court implied it could assign LLC assets to Greg as a salary when it ruled Greg had not dissipated assets in using income from

the LLC for living expenses during the separation. However, the district court's language merely explained Greg's use of the funds. The court's rationale for its dissipation holding is not an actual division or award of LLC assets. Neither the district court nor this court is distributing LLC assets to Greg. We need not direct him to return assets to the LLC that he himself distributed.

As to Kathy's claim that some of the parties' vehicles are LLC assets, we first note Kathy did not raise this argument at trial or in her post-trial motion before the district court. Further, our record does not support that assertion. The record does not contain title documents, but it does indicate that both parties consistently referred to the vehicles as personal assets. In both Kathy's financial affidavit and proposal for division of assets, she lists all the vehicles as personal marital assets. Greg's financial affidavit confirms that treatment. Indeed, the parties together stipulated pre-trial that all the vehicles in question were marital assets and under the current ownership of Kathy, Greg, or both jointly. Based on this record, we affirm the district court's power to divide the vehicles between the parties, and its division was equitable. We therefore affirm the district court's conclusion as to both the vehicles and Greg's use of LLC assets for living expenses.[6]

### E. IPERS Benefits

Kathy lastly asserts the district court used an incorrect formula to divide her retirement benefits in the IPERS system because it failed to remove future

---

[6] Because the vehicles are not demonstrably LLC assets and neither this court nor the district court distributes LLC assets in the form of a salary, the district court did not need to pierce the corporate veil to reach its conclusions despite Kathy's claims to the contrary.

accumulations from Greg's share of the benefits. In its order on post-trial motions, the district court awarded Greg fifty percent of 27/30ths of Kathy's IPERS benefits, accounting for pre-marital time, but did not consider that she continues to work and earn benefits and will do so into the future.

Greg claims Kathy did not raise the issue of the effect of future earnings on the IPERS calculus at any stage before the district court. We disagree. In her post-trial motion, she states, "[T]he date of the parties['] separation, which was January of 2010,[7] should be the cutoff point for any division of the IPERS account. The trial court ruling should be modified accordingly." This language clearly puts the issue of future benefit accrual before the district court. The district court modified its division of Kathy's IPERS benefits in response to her motion, but the modification only accounted for benefits accrued before the marriage and did not establish a cut-off date as Kathy requested. The district court stated, "All other requests contained in [Kathy's] Motion to Expand and Enlarge Findings and Ruling not expressly granted herein are overruled." Since the issue was "both raised and decided by the district court," it is properly preserved for our review. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

We agree with Kathy that the district court's order fails to account for her future IPERS' contributions. The proper calculation is that used in *In re Marriage of Sullins*, 715 N.W.2d 242, 255–56 (Iowa 2006), and *In re Marriage of Brown*, 776 N.W.2d 644, 651 n.2 (Iowa 2009). The proper calculation is:

---

[7] Though Kathy has now conceded January 2010 is not the proper cutoff date, she nevertheless put the issue of future earnings before the district court by initially asserting that date.

[50%] of the gross monthly or lump sum benefit payable at the date of distribution to [Kathy] multiplied by the "service factor." The numerator of the service factor is the number of quarters covered during the marriage period of [June 26, 1976] through [October 22, 2013] and the denominator is [Kathy's] total quarters of service covered by IPERS and used in calculating [her] benefit.

*Brown*, 776 N.W.2d at 651 n.2. We modify the district court's order to reflect this change.

### IV. Conclusion

With the modification to treat the inherited properties consistently, the district court order equitably distributes the parties' properties and awards equitable spousal support to Greg. The court's finding Greg had not dissipated assets was within the range of its discretion. We affirm on these issues.

However, the district court's calculation of Kathy's IPERS benefits failed to account for benefits expected to accrue from her future earnings. We therefore modify the district court's order in that respect. Greg's share of Kathy's IPERS benefits will be calculated on the date of distribution using the method described by our supreme court in *Brown*, 776 N.W.2d at 651 n.2. Entry of a corrected qualified domestic relations order consistent with this ruling shall be prepared by Kathy's counsel for the court's signature.

**AFFIRMED AS MODIFIED.**