In re MARRIAGE OF William C. LUEBBERT Jr. and Joan D. Luebbert.

Upon the Petition of William C. Luebbert Jr.,
Petitioner/Appellant/Cross-Appellee,

And Concerning Joan D. Luebbert, Respondent/Appellee/Cross-Appellant.

No. 86-80.

Court of Appeals of Iowa.

Nov. 26, 1986.

Marie Prince-Cohen and J.W. Conway, of Conway & Prince-Cohen, Muscatine, for petitioner/appellant/cross-appellee.

Robert DeKock, Muscatine, for respondent/appellee/cross-appellant.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

William C. Luebbert Jr. and Joan D. Luebbert were married in February, 1982. They separated and a dissolution petition was filed in October, 1982. A decree dissolving their marriage was entered in August, 1983. At the time of dissolution William was 56 years of age and Joan 55 years of age. William is a public school teacher and was employed in that capacity during the marriage. He is currently so employed. Joan did not work outside the home during the marriage. She currently is a part-time secretary.

The decree of dissolution awarded Joan $100 per week alimony for two years or until she became self-supporting, whichever occurred first, and ordered William to pay her health and accident[1] insurance. The decree also provided, "..., after two years has (sic) passed the Court, upon application of either party, shall review the alimony award without any need of showing a change in circumstances." In September, 1985, Joan filed an application for modification claiming her financial condition had not improved and her medical condition has deteriorated. She asked that alimony be continued indefinitely.

The trial court determined Joan had made sacrifices during the marriage and her continuing need was demonstrated. The trial court determined Joan nets $150 per week for part-time employment, but also found her employment is only marginally secure and she has no insurance benefits. The trial court determined her health has deteriorated. The trial court also determined Joan's current financial situation is still the result of the short-term marriage. As such, the trial court ordered the $100 per week alimony and the insurance benefits be paid until she reached 62 years of age.

William appeals from this ruling contending on a review of the record the alimony should not continue.

### Review

Although neither party gives us guidance, we must first determine what we review. Do we assess the modification issue with the whole spectrum of the dissolution *or* do we only examine it in reference to factors which have occurred *since* the decree was entered. We note the judge entering the decree of dissolution was *not* the judge on the decree of dissolution.

The decree of dissolution was not a final one as to payment of alimony. This clearly was the intent of the trial court. Thus, we determine the original decree is not final on the issue of alimony. *See Wells v. Wells,*

---

1. The insurance cost $206 per month at the time of trial but will increase to $264 per month.

168 N.W.2d 54, 57 (Iowa 1969); *Tallarico v. Tallarico*, 164 N.W.2d 805, 807 (Iowa 1969). The appellate courts of this state, although stopping short of forbidding the practice, have discouraged the retention of jurisdiction to modify dissolution decrees without a showing of change of circumstance. *See In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981); *In re Marriage of Hoag*, 380 N.W.2d 8, 9 (Iowa App.1985). While the issue is not before us, we find it appropriate to point out this case did not justify the issuance of a piecemeal decree. Because the alimony issue was not final in the original decree, we must assess the order under the dictates of Iowa Code § 598.21 (1985). Section 598.-21(3) provides:

> Upon every judgment of annulment, dissolution or separate maintenance, the court may grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
>
> a. The length of the marriage.
> b. The age and physical and emotional health of the parties.
> c. The distribution of property made pursuant to subsection 1.
> d. The educational level of each party at the time of marriage and at the time the action is commenced.
> e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or trailing to enable the party to find appropriate employment.
> f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> g. The tax consequences to each party.
> h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.
> i. The provisions of an antenuptial agreement.
> j. Other factors the court may determine to be relevant in an individual case.

This was a marriage of very short duration. Both parties are in their late 50s and have children from prior marriages. Joan claims to suffer from arm problems, heart problems and nervousness. William has ulcers and a back flare-up. Both are currently employed at nearly the level they were prior to marriage.

The parties accumulated little property during the marriage. Prior to marriage Joan had a job in Massachusetts paying her $5.00 per hour. She had just completed a training period in that job. She also had $17,000 which she used to pay her debts, to fix up some property awarded her in the decree and for living expenses.

William has an income of about $24,000 annually, an equity in a home and other investments. His assets remained stable during the marriage.

Each party received the property they had at the time of marriage and additionally, Joan received $5,000 cash plus William paid one-half of her moving and transportation costs and $1,000 toward Joan's attorney fees. Prior to the issuance of the decree Joan had filed a personal injury suit against William. Her rights in that suit were set aside to her in the dissolution decree.

Joan left the marriage under an economic disadvantage. She does not have the seniority in the job market that William does. While Joan is now employed at substantially the same level she was prior to this short-term marriage, she does not have the economic security William has, nor does she have the economic security William had when she married him. Her late entry into the job market was occasioned by her desire to be at home with the children of her

first marriage. By Joan's own testimony she assumed her entry into this marriage would assure her being taken care of. Admittedly, she assumed the position of a very traditional spouse in this relationship. Her own testimony is, "and I was there with a cup of coffee and some cookies and stuff when he came home and a nice dinner. I thought that is what a wife was supposed to do, was wait on her husband." Joan was looking for more security than she had as a single person. Had the marriage lasted, she would have had the security. The marriage did not last and her contention is she is still entitled to this security. However, Joan cannot expect to be maintained at the same standard of living she enjoyed while she was married. *In re Marriage of Giles*, 338 N.W.2d 544, 546 (Iowa App.1983). In *Giles*, this court made that statement in assessing the alimony award to a 50–year–old wife in poor health who had been married nearly 32 years. *Id.*

William claims he is being charged dearly for a very short-term marriage, and he should not be ordered to continue to pay her $100 weekly plus insurance premiums of $264 monthly. These parties *both* made a bad decision. However, fault is not a factor for us to consider in awarding alimony. *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976); *In re Marriage of Zoellner*, 219 N.W.2d 517, 524 (Iowa 1974).

When a court determines support is necessary, it may continue the support obligation which has survived the dissolution of marriage because the obligation is grounded in public policy. *In re Marriage of Marshall*, 394 N.W.2d 392, 396 (Iowa 1986). However, the Iowa court has rejected alimony where the marriage was short-lived, each party has an occupation and each will receive retirement benefits. *In re Marriage of Maskel*, 225 N.W.2d 115, 120 (Iowa 1975).

In *In re Marriage of Downing*, 210 N.W.2d 436 (Iowa 1973), the issue of alimony after a short-term marriage was weighed under a different factual concept. In *Downing*, the parties were 20 years old when married, they separated after five and one-half months, and no children were involved. *Id.* at 437. The wife had an eye disease which antedated the marriage. *Id.* However, in weighing the fact of the wife's disability on the issue of alimony, the court discussed the fact that the marriage was short-lived. *Id.* at 437. The court determined the spouses did not contribute to the relationship for a considerable period, therefore, the equity of alimony was lessened. *Id.* But see *In re Marriage of Cerven*, 335 N.W.2d 143, 146 (Iowa 1983). (Court ordered alimony of $500 a month after a marriage involving about one year's cohabitation where the wife was in a nursing home and incapable of self-support based on the premise that alimony is in lieu of the husband's obligation to support the wife).

■ We determine Joan's desire for a better standard of living than she can provide for herself does not justify continuing the alimony award in a short-term marriage. We determine Joan has been compensated for sacrifices she made in marrying William. Joan is self-supporting, although not at the level which she would like to be. If Joan was in fact injured by William during the marriage, she retains her personal injury claim and reserves the right to be compensated through that claim. By this statement we do not intend to infer there is a claim. Considering all factors, we modify the order and provide the alimony shall terminate as provided for in the original decree.

■ Joan gave up an excellent health insurance policy at the time of marriage. She is in need of medical insurance and because of her limited income it would be difficult for her to pay the premium on a health insurance policy. We therefore affirm that portion of the decree providing William shall pay the insurance benefits until Joan reaches age 62.

Joan cross-appealed. William contends her notice of cross-appeal was not timely filed. Without addressing the issue of her cross-appeal, we determine the issues raised on her cross-appeal are without merit.

The trial court awarded Joan attorney fees of $300. We affirm that award. Each party shall pay his/her own appellate attorney fees. Costs on appeal are taxed one-half to each party.

MODIFIED.