# IN THE COURT OF APPEALS OF IOWA

No. 23-0357
Filed November 21, 2023

**IN RE THE MARRIAGE OF MARTY PAUL BINTNER**
**AND SHEILA VON BINTNER**

**Upon the Petition of**
**MARTY PAUL BINTNER,**
      Petitioner-Appellant,

**And Concerning**
**SHEILA VON BINTNER n/k/a SHEILA VON JOHNSON,**
      Respondent-Appellee.
_____

      Appeal from the Iowa District Court for Audubon County, Richard Davidson,

Judge.


      Marty Bintner appeals the modification of spousal support in the decree

dissolving his marriage. **AFFIRMED.**


      Todd J. Argotsinger and Bryan D. Swain of Salvo, Deren, Schenck, Gross,

Swain & Argotsinger, P.C., Harlan, for appellant.

      Jonathan Mailander of Mailander Law Office, Atlantic, for appellee.


      Heard by Tabor, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Marty Paul Bintner appeals the modification of the decree dissolving his marriage to Sheila Von Johnson. Marty specifically contends the district court should not have extended the spousal support award or awarded Sheila attorney fees. Sheila requests Marty pay her appellate attorney fees. Upon our de novo review, we agree with the district court that modification is warranted and we affirm. We also award both trial and appellate attorney fees to Sheila.

## I.      *Background Facts and Proceedings.*

The parties were married in 1989. During their twenty-year marriage, they had six children together. Sheila was a homemaker for most of the marriage while Marty worked outside the home. Near the end of the marriage, Sheila was diagnosed with breast cancer and underwent treatment. Marty was making approximately $60,000 annually. When the two divorced, they stipulated to a spousal support award. Marty was to pay Sheila $800 per month for twelve years, with payments beginning in April 2009. The trial court dissolved their marriage, adopting their stipulated spousal support award. Sheila also received child support for the four youngest children.

Just days after the court entered the dissolution decree, Marty was laid off. He immediately petitioned to modify child support and spousal support due to his unemployment. The district court granted the petition, reducing his child support and his spousal support obligations by half. Marty paid the modified amount for the next four years and started a new job in 2013. In 2017, he began voluntarily paying Sheila the original $800 per month in spousal support despite the modification. By this time, the child support award was terminated because the

children had reached the age of majority and had become ineligible for support, but Marty still voluntarily provided some financial support to the children. Marty remarried around this time and remained married at the time of this appeal.

After recovering from her illness, Sheila returned to school and became an esthetician and massage therapist. From 2018 to 2020, she made between $19,000 and $24,000 annually. Starting in 2020, Sheila elected to receive Social Security benefits. She testified at trial that her financial situation forced her to claim benefits early, in effect reducing the monthly benefit amount to $570 from the $719 per month award she would have received if she elected to wait until age sixty-six to claim them. In 2022, Sheila suffered two heart attacks requiring stent surgeries and shoulder injuries to both of her shoulders. She attributed her need for more financial support to her health complications along with the COVID-19 pandemic. Specifically, her shoulder injuries prevent her from maintaining her esthetician practice, and her ability to have surgery to repair or replace her shoulders is limited by her diminished heart function. In 2021, Sheila petitioned to modify the dissolution decree, requesting an extension of spousal support, retroactive child support, and attorney fees. Following trial, the district court awarded Sheila $500 per month in spousal support and granted a thirteen-year extension of the award plus $2000 in attorney fees, but it declined her request for retroactive child support. Marty now appeals, claiming the district erred in extending the duration of the spousal support award and awarding attorney fees.

## II.     Modification of Spousal Support.

First, Marty contends the district court improperly modified the spousal support obligation by extending it and changing the amount. We review

dissolutions of marriage and their modifications de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). While not binding, we give weight to the district court's factual findings, especially those regarding witness credibility. *Id.*

"When a court determines support is necessary, it may continue the support obligation which has survived the dissolution of marriage because the obligation is grounded in public policy." *In re Marriage of Luebbert*, 400 N.W.2d 80, 83 (Iowa Ct. App. 1986). Modifications to spousal support require a substantial change in circumstances not contemplated by the original court. *Sisson*, 843 N.W.2d at 870–71 (citing Iowa Code § 598.21C). A substantial change in circumstances may include "changes in employment, income, earning capacity, health, and medical expenses of a party." *Id.* at 870. This gives the modifying court the ability to change durations and amounts of the award when the circumstances are "'extraordinary' and render the original award grossly unfair." *Id.* at 871 (quoting *In re Marriage of Wessels*, 542 N.W.2d 489, 489 (Iowa 1995)). Generally, this may be evidenced by "the unexpected onset of a medical condition by a party that rendered the expectation of self-support unrealistic." *Id.* at 871.

The extraordinary circumstances justifying a modification and extension of spousal support are present here. *See, e.g.*, *In re Marriage of Marshall*, 394 N.W.2d 392, 396–97 (Iowa 1986) (former spouse's cancer diagnosis leads to reinstatement of spousal support payments); *Wessels*, 542 N.W.2d at 400 (permanent psychiatric condition prevents former spouse from returning to employment); *Sisson*, 843 N.W.2d at 871–72 (modifying spousal support when former spouse is diagnosed with terminal cancer). Sheila has significant health concerns that prevent her from maintaining employment and self-sufficiency and

that were not contemplated at the time of the original decree. Through no fault of her own, Sheila's health concerns have "been a general impediment in her ability to reenter and compete in the workforce." *Sisson*, 843 N.W.2d at 872. She has been unable to work due to her shoulder injuries. She testified she cannot use her right shoulder, which renders her unable to work as an esthetician or to even be able to write her own name, and she will be unable to work until undergoing a complete shoulder replacement surgery. The left shoulder, though not as bad as the right, will require a similar repair surgery if not a complete replacement. Further, she suffers from diminished heart function due to her two recent heart attacks, each of which required extended hospital stays, the second of which reduced her heart function to thirty-eight percent and only recovered to sixty-two percent function by the time of trial. Because of concerns about her ability to survive surgery after two heart attacks, the earliest she could have her right shoulder surgery is 2023 with an anticipated return to work in fall of 2023. But she testified her health prevents her from working full-time and she intends to return only part-time once recovered. When comparing her part-time income and Social Security benefits with her monthly expenses, there is a definite shortfall. This renders the original award grossly unfair as Sheila is unable to provide for herself due to unexpected and severe health issues. *See id.* at 871.

Further, Marty has the ability to financially help meet Sheila's needs. He testified at trial he currently has no plans to retire and will continue working as long as he's able. He earned $108,600 in 2021, and he testified he expected to earn more in 2022. His imputed expenses and his level of income leave him with the ability to provide Sheila support.

While Marty argues Sheila's medical condition was contemplated by the court when it entered the original decree, we disagree. At the time of the dissolution, Sheila was diagnosed with breast cancer. The trial court awarded spousal support with the contemplation that Sheila would receive treatment and become self-sufficient within twelve years. Following her surgery, Sheila was "able to function pretty well" within the first year. In contrast, the health complications before us today are distinct, including a loss of full heart function due to two heart attacks as well as shoulder injuries requiring a complete shoulder replacement surgery of one shoulder and repair or possible replacement of the other. Sheila is not expected to be able to work until having surgery and, therefore, is unable to provide for herself financially. Further, even post-surgery and recovery, she is expected to only continue working part-time at most. This was not the expectation of the court when it awarded spousal support.

We turn, then, to the district court's calculation of the amount of the support obligation. The court awarded $500 per month from April 2021 to March 2034, a total sum of $78,000. This would result in payments terminating when Marty turns sixty-seven years old and Sheila turns seventy-seven, ten years after the full retirement age specified by her Social Security benefits. This length was selected by the court because at that time, Sheila will be able to draw on Marty's Social Security benefits due to the length of their marriage. While Marty counterargues Sheila is eligible five years earlier, when she is seventy-two and he is sixty-two, the record is insufficient to prove this claim. Specifically, though Sheila testified about contacting Social Security and being told that she may be able to draw from Marty's Social Security, nothing else in the record corroborates that possibility.

Thus, we are not convinced from such limited record that Sheila will have the additional support that would eliminate her need for spousal support earlier than the district court's selected length. We therefore affirm the district court's modified spousal support.

### III.    *Attorney Fees Awards.*

Marty next argues Sheila should not be awarded any attorney fees. He contends the district court abused its discretion in granting trial attorney fees and Sheila should not receive appellate attorney fees. We review the two arguments separately.

*A. Modification Attorney Fees.*

Marty challenges the district court's award of $2000 in trial attorney fees to Sheila. The Iowa Code allows the court to award "reasonable" attorney fees to the "prevailing party" in a modification action. Iowa Code § 598.36 (2021). We review the award for an abuse of discretion. *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). An award of trial attorney fees depends on the parties' relative financial positions. *Id.* We will overturn an award of trial attorney fees only if "it rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (citation omitted).

Because we affirm, Sheila is the prevailing party. When modifying the spousal support obligation, the district court considered Sheila's disparate income as compared to Marty. Sheila is unable to pay the attorney fees due to her failing health and inability to work. Meanwhile, Marty is still making a substantial six-figure income. Because the district court properly considered such factors, we find no abuse of discretion.

*B. Appellate Attorney Fees.*

Finally, Sheila asks us to award her an additional $4093.50 in appellate attorney fees. Appellate attorney fee awards are not a matter of right but are within our discretion. *See Christy*, 878 N.W.2d at 469. "[W]e consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). We find Sheila is not in a financial position to pay her appellate attorney costs. Meanwhile, Marty has the ability to pay such fees. Therefore, we order Marty responsible for $4093.50 in appellate attorney fees.

## IV.     *Disposition.*

Because Sheila established a substantial change of circumstance that renders the original award grossly unfair, we affirm the court's order extending the spousal support obligation. Because the district court did not abuse its discretion, we affirm the attorney fees award. Finally, we award appellate attorney fees to Sheila.

**AFFIRMED.**